**SCOTT v. ATLAS PRESS CO.**

No. 230.

District Court, W. D. Michigan, S. D.

March 5, 1943.

Troff & McKessy, of Kalamazoo, Mich., for plaintiff.

Warner, Norcross & Judd, of Grand Rapids, Mich., and Lucien F. Sweet, of Kalamazoo, Mich., for defendant.

RAYMOND, District Judge.

Defendant urges that the parties hereto had the right to enter into the agreement of October 17, 1938, upon the authority of Walling v. A. H. Belo Corporation, 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716, (hereinafter referred to as the "Belo case"). With this contention, the court is unable to agree.

From the various authorities cited in the briefs of counsel, it is evident that the validity of an agreement purporting to establish regular rates of pay under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., depends upon the essential purpose and resulting consequences of the contract. In the Belo case, the guaranty of $40 a week to each employee regardless of the number of hours worked in each week was sufficient to convince the majority of the court that the contract was entered into in good faith and did, in fact, establish a regular rate of compensation in excess of that provided by the act. In the instant case, no such guaranty is provided. There is no guaranty of any number of hours or of any amount of pay per week.

The Circuit Court of Appeals in the Belo case, (Fleming v. A. H. Belo Corp., 5 Cir., 121 F.2d 207, 210), found that the contracts were "actual bona fide contracts of employment" and that "they were intended to, and did, really fix the regular rates at which each employee was employed". This view was approved by the Supreme Court. The distinction between the Belo case and the instant case is that in the Belo case it was found that the guaranty contract carried out the intention of Congress because it specified a "basic" hourly rate of pay and not less than time and a half that rate for every hour of overtime work beyond the maximum hours fixed by the act. In the instant case, there is no guaranty of payment of an agreed weekly wage at a fixed amount, but only an agreement that for the hours actually worked an agreed rate will be paid.

By the terms of the agreement, if an employee worked the maximum number of hours permitted by the act and no more, he was compensated at the previously existing hourly and piece work rates, with no deduction of 5%.

If he worked one hour overtime, the agreement for deduction of 5% was ignored in practice in order to avoid the obviously unjust result of his receiving less for 45 hours' labor than for 44 hours' labor.

If he worked fifty hours, the provisions for deduction of 5% from the regular rates were applied not only to the overtime but to the total hours of employment during the week, with the result that the employee received substantially the same compensation as he had received prior to the effective date of the Fair Labor Standards Act.

If he worked in excess of fifty hours, he was paid as last above indicated for the fifty hours, and for the excess at one and one-half times the hourly or piece work rates but without the 5% deduction.

The obvious difference between the Belo case and the instant case is that in the Belo case the employee had the clear and decided advantage of a guaranty of a minimum weekly income, regardless of the number of hours he was actually employed, while in the instant case, the agreement guaranteed only that for the hours worked, defendant would pay at certain hourly rates. There is a wide difference between a guaranty of weekly payments regardless of the number of hours worked, and a guaranty of payment at a certain rate for hours actually worked. The advantage to the employee was clearly recognized in the majority opinion in the Belo case wherein Justice Byrnes said (316 U.S. at page 635, 62 S. Ct. at page 1229, 86 L.Ed. 1716):

"* * * Many such employees value the security of a regular weekly income. They want to operate on a family budget, to make commitments for payments on homes and automobiles and insurance. Congress has said nothing to prevent this desirable objective."

Without this advantage to the employee, it is quite clear that a different result would have been reached. In that case, regardless of the length of the work

week, the employee was paid a weekly salary of $40, while in the case at bar, defendant paid the employee for actual hours worked at hourly and piece rates for 44 hours or less, but when the employee worked overtime, a reduction of 5% was applied to the total hours worked up to fifty hours. In other words, the so-called "regular rate" was fictitious and irregular and, as previously indicated herein, it varied with the hours of labor to which it was applied, with the result of substantially defeating the purpose of the act providing for time and a half for overtime. The agreement tends to defeat one of the fundamental objects of the act which was to spread employment. The necessary result of the agreement, in practice, was that no substantial amount was, in fact, paid for overtime.

The conclusion of the court therefore is that the alleged agreement of October 17, 1938, did not provide for a bona fide reduced regular rate of pay; that it is in contravention of the provisions of the Fair Labor Standards Act, and is void as against public policy.