WALLING, Adm'r of the Wage and Hour Division of U. S. Dept. of Labor, v. HELMERICH & PAYNE, Inc.

No. 2704.

Circuit Court of Appeals, Tenth Circuit.

Nov. 15, 1943.

George B. Searls and Morton Liftin, both of Washington, D.C. (Irving J. Levy, Acting Sol., Bessie Margolin, Asst. Sol., and Llewellyn B. Duke, Reg. Atty., all of Dallas, Tex., on the brief), for appellant.

Eugene O. Monnet, of Tulsa, Okl., (Frank Settle and Sam Clammer, both of Tulsa, Okl., on the brief), for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

The Administrator of the Wage and Hour Division of the Department of Labor instituted this action against Helmerich & Payne, Inc., to enjoin alleged violations of the Fair Labor Standards Act, 52 Stat.

1060, 29 U.S.C.A. § 201 et seq. The company is engaged in the business of drilling oil and gas wells, some for itself and some for others, and in the production of oil and gas; and in the furtherance of its activities, it had during the times in question an average of approximately 400 employees, of whom about 305 were engaged in drilling operations, about 70 in the operation of leases, and about 25 in clerical positions. The court granted the injunction in part as sought, but denied it in respect to employment under and in accordance with three types of contracts being used; and the Administrator appealed.

One type of these contracts is referred to as the splitday plan. It provides for fixed regular hourly rates of pay for the several classifications, all in excess of the minimum contained in the act; provides that the regular rate per hour of employees within certain classifications shall be paid for the first four hours in an eight-hour tour, and that hours worked in excess of the first four shall be paid for at one and one-half times the regular rate; provides that employees in another classification shall be paid the regular rate for the first five hours in each ten-hour tour, and that the hours worked in excess of the first five shall be paid for at one and one-half times the regular rate; provides that the employees in other classifications shall be paid the regular rate per hour for the first five hours in a twelve-hour tour, and that hours worked in excess of five shall be paid for at one and one-half times the regular rate; provides that the regular rate shall never apply to more than forty hours in any workweek—that being the maximum provided in the act at the time of the execution of the contracts; and provides that in the event the monthly compensation of employees coming within certain groups shall not equal certain respective sums, the company will advance the difference which shall apply on future overtime payments, and that adjustments shall be made on January first of each year, and when the employment ceases. The second type of the contracts in question is called the advance-plan contract. It likewise provides for fixed regular rates for the several classifications, all in excess of the minimum fixed by the statute; provides that such regular rates shall be paid for the first forty hours worked in any week, and that the hours worked in excess of forty shall be paid for at one and one-half times the regular rate; and provides that in the

event compensation of employees within certain classifications shall not equal certain specified sums, the company may advance and loan the difference, which shall apply on future overtime payments, adjustments and accounting to be made on January first, or when the employment ceases. No advances or loans were ever made under either of the two types of contract.

Both types of contracts are attacked on the ground that they are not actual, bona fide agreements of employment, entered into in good faith, with regular and overtime rates of pay, within the meaning of the act; but provide fictitious and unreal rates used solely for the purpose of compensating the employees in the same amounts as they were paid before the act went into effect. The company concedes that the real purpose in entering into the contracts was to continue paying the employees the same amounts per week in the aggregate as they had been paid before the act became effective, and at the same time to comply with the act. Of course, a contract which capriciously provides for fictitious and unreal rates bearing no relation to the wages paid does not comply with the act. But a contract understandingly entered into in good faith, providing in a bona fide sense for regular and overtime rates per hour which conform to the provisions of the act, is effective, even though one of the intents and purposes is to continue to compensate the employee in the same amount per week in the aggregate as he had received before the act went into effect. Walling v. A. H. Belo Corp., 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716. These contracts were actually entered into; there is no suggestion that the parties failed to understand them; there is no showing that the employees were overreached; and there is nothing in the record to indicate that any other element of fraud attended their execution. They expressly provide in clear and explicit language for regular rates per hour which exceed the minimum rates provided in the act, provide that such rates shall be paid for regular hours which do not exceed the maximum provided in the act, and provide for overtime at one and one-half times the regular rates for all excess time worked. The company and its employees mutually entered into the respective arrangements, and they do not contravene the exactions of the act. Walling v. A. H. Belo Corp., supra.

■ Emphasis is placed upon the provision in one type of the contracts for advances to certain employees and the provision in the other type for loans to certain employees. But, as already said, each type provides for regular pay and overtime pay in amounts which meet the requirements of the act. Having done that, the provision in one for advances and in the other for loans over and above such pay does not render the contracts objectionable, within the purview of the act. Walling v. A. H. Belo Corp., supra.

■ The third type of contract challenged is referred to as the X formula contract. Exhibit I in the record is typical. It provides for a specified sum per week, payable bi-weekly; provides that the pay shall not be less than thirty cents per hour for the first forty hours and forty-five cents per hour thereafter in each week; provides that the pay received shall cover and include regular time and overtime; provides that the regular hourly rate per each week shall be determined by the following formula, "Let X equal my regular or base hourly wage for each work week. X shall then be determined by multiplying X by the number of hours in each week which I work up to the first 40 and adding to it the number of hours worked in said work week in excess of said 40 hours times $3X/2$, which shall equal the compensation I receive for that week"; and provides that in the event the weekly regular hourly wage, determined in accordance with the formula, shall in any week equal less than thirty cents per hour, thirty cents per hour shall be the regular hourly wage for the first forty hours worked in that week, and forty-five cents per hour shall be the overtime wage for the additional hours worked. In Overnight Motor Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682, the employee received a fixed weekly salary before the act became effective and a slightly larger salary thereafter. Nothing above the weekly wage was paid, because the maximum workweeks, computed at the statutory minimum rates with time and a half for overtime would not require any sum above the weekly wage. In other words, the wage paid was sufficient in amount to cover the statutory minimum base pay for the statutory maximum regular hours and fifty per cent additional for the additional hours actually worked. But there was no contractual limit upon the hours which the employer could have required the employee to work for the agreed wage. Neither was there any provision for additional pay in the event the hours worked required minimum compensation in excess of the fixed wage. The court said that the contract was deficient in complying with the law. Here, this type of contract does not fix in terms of dollars and cents any regular rate or overtime rate of wage. Until the work has been done and the end of the week arrives, neither the employer nor the employee knows the regular or overtime rate. Until then both parties are in the dark as to such rates. And then the regular rate is automatically determined by application of the formula, so that the regular rate for the first forty hours and one and one-half times that rate for the overtime shall equal the stipulated weekly wage. The formula serves only as a means of arriving at a figure for the regular rate which, together with the overtime rate, represents the weekly wage, And in practical reality there is no contractual limit on the hours the company may require an employee to work for that amount, if it sees fit to do so. Subject only to the exception that the employee must receive not less than thirty cents per hour for the first forty hours in each workweek and forty-five cents per hour thereafter for overtime, he receives the same wage regardless of the number of hours he is required to work. The only difference is that by application of the formula, as the number of hours increases the regular rate per hour is decreased. But in the end, the employee receives in lump sum the weekly wage. While the contract does provide for a regular wage of not less than thirty cents per hour and overtime of not less than forty-five cents per hour, that provision has no practical operative effect whatever because in order to earn more than the stipulated weekly wage the employee would be obliged to work unreasonably long hours—far in excess of the hours which the parties could reasonably have contemplated. A contract of this kind fails to meet the requirements of the act. Overnight Motor Co. v. Missel, supra.

The judgment is modified by including within its injunctive provisions a provision restraining the company from the further production of goods for commerce through the use of employees under contracts of which Exhibit I is typical, and as modified it is affirmed.