698

WALLING, Adm'r, Wage and Hour Division, Dept. of Labor, v. ALASKA–PACIFIC CONSOL. MINING CO.

Civil Action No. 461.

District Court, W. D. Washington, Northern Division.

March 21, 1944.

Douglas B. Maggs, Sol., and Irving J. Levy, Associate Sol., both of Washington, D. C., and Dorothy M. Williams, Regional Atty., and Willard S. Johnston, Sr. Atty., United States Department of Labor, both of San Francisco, Cal., for plaintiff.

Gates, Montgomery & Onstad, of Seattle, Wash., for defendant.

BLACK, District Judge.

This is an action instituted in January, 1942, by the Administrator of the Wage and Hour Division, United States Department of Labor, against the defendant company for an injunction to restrain alleged violations of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., the plaintiff contending that the defendant in numerous respects has been refusing to pay overtime at one and one-half times the regular rate and has been keeping inadequate records.

Prior to the trial numerous issues were presented to the court upon numerous motions, pre-trial conferences and briefs. After the trial the matter was submitted upon written argument.

The cause went to trial upon the acknowledgment of the defendant of the constitutionality of the Act and that it was engaged in the production of gold intended for, and which was actually shipped in, interstate commerce and that it and its employees were subject to the Act.

To my mind the evidence at the trial unquestionably established that the defendant from the first day the Act became effective in 1938 and continuing to the trial was endeavoring to comply with the Act.

Defendant conducted its mining operations in a quite isolated location in Alaska and for such reason was confronted with problems very different than those encountered by similar concerns in the states. Similarly, the interests of its employees differed materially from what would be expected in the United States proper.

The mine was about seventy-five miles from Anchorage in a mountainous region. Most of the employees were necessarily brought long distances at heavy expense to the company. There was no surplus labor available. It was imperative that the mine and mill be kept in continuous

operation seven days a week. With but few exceptions the men had no other quarters than those furnished by the defendant. The men themselves were very anxious to work fifty-six hours a week as they had been doing prior to the passage of the Act. There were no outside amusements, no place for recreation and as was the rule in similar isolated working camps in Alaska the men naturally wished to put in all the time they could and earn as much as possible during the period they were away from the outside. Under the evidence, the defendant was paying the highest wages of any similar mine and mill operation in that territory, which wages were far above the minimum required by the Act.

The defendant at the time the Act went into effect by notice and in meetings with the employees advised them unmistakably what rate it intended to pay for the regular hours and for overtime hours and as to the number of regular hours and overtime hours each day as well as to the effect that the board and lodging was to be extra compensation for overtime hours.

The evidence further establishes that the employees from time to time agreed to the schedules of pay and hours and to the conditions of employment and that payment at all times from then to the time of trial was made in accordance with such agreements as the company had with its employees. The books and records of the company were kept in accordance with its understandings with the employees and payments were made in accordance therewith. Each month each employee received a slip with his pay check, which slip was retained by the employee and specified the number of regular hours and the agreed rate and the number of overtime hours and the agreed rate which was at least one and one-half times the regular rate. Every month the men thus fully advised signed a receipt to the company acknowledging full payment.

Until about the time this case was instituted the defendant agreed with certain employees whom it mistakenly considered exempted as executives for monthly compensation for services not exceeding fifty-six hours a week and agreed that such monthly compensation should cover regular time and overtime at one and one-half the regular rate. But there was no specification as to what the regular rate was. At about or shortly after the inception of this action such employees were placed upon an hourly basis with time and one-half for the overtime hours. And until the fall of 1941 the defendant paid its cookhouse employees upon a monthly basis with no provision as to overtime, it having been the understanding of the defendant that plaintiff construed the Act as not applying to cookhouse employees. At any rate in the fall of 1941 when the defendant learned the contrary it placed the cookhouse employees upon the same basis of regular hours and overtime as in force generally with its men.

In 1941 in connection with what was described as water tunnel construction and raises therefrom the defendant in good faith pursuant to agreements with certain employees provided for payment of bonuses to them dependent upon the footage driven in addition to payment of substantial wages which defendant and the men agreed included overtime. But in connection with water tunnels and raises plaintiff contended that the wage with overtime plus the bonus should be divided by the number of hours worked and that such would constitute only the average regular hourly wage. In other words, the plaintiff contends that the defendant in spite of the agreements with the men that they were being paid overtime has actually paid no overtime at all.

However, in any event before the institution of this action such water tunnel and raises were completed and the bonus system was thereafter not employed.

But beginning in 1942 after the beginning of the action the defendant as to a portion of its tunnel work connected with prospecting or development entered into contracts with certain of its employees pursuant to written bids by those of its employees who desired to bid on certain work under which the employees contracted to drive the tunnel at so much a foot, which in practice has resulted in payment to the men under such contract system of about $15 a day on the average during the life of such contracts. In connection with such contracts the men agreed with the company that their base pay was to be $0.40 an hour for forty hours and $0.60 for each of the sixteen overtime hours each week, but that the men should have as much more than that as they were able to make pursuant to the terms of their contracts, which, as above stated, have been very profitable to the men and

quite satisfactory to the company. Under such bidding system if the contract price was not sufficient to pay such agreed regular and overtime rates the defendant agreed nevertheless to pay $0.40 an hour for forty hours a week and $0.60 for each overtime hour, regardless of how much the contract price would thereby be increased.

But plaintiff contends that regardless under the evidence of the desire of the men and the company to enter into such mutually satisfactory arrangements so profitable for the men that the defendant and employees could not legally do so.

Plaintiff further contends that the total amount paid on the contract per week averaging about $15 a day, as aforesaid, should be divided by the fifty-six hours worked per week of seven working days to obtain the regular hourly wage and that the defendant should have paid the employees in addition to the contract price sixteen hours overtime each week computed on plaintiff's theory.

In effect, the plaintiff's position is that the more profitable such contracts were for the men the more defendant should be penalized by overtime.

It is conceded that the defendant at all times paid its employees far more than the minimums required by the Act. According to the evidence during practically the entire period covered by this action the employees have been well pleased with the rate of pay and hours and conditions of employment provided by defendant.

The evidence further establishes that the employees desired to work the number of days and at least the weekly aggregate of hours they were employed and that after this action was started practically all of the employees even then continued to be well pleased with the defendant as employer and with the hours and wages and defendant's method of computing overtime.

The evidence shows that prior to the institution of the action there were some irregularities on occasion in timekeeping and bookkeeping which were chiefly occasioned either by change of shift so that the men who had been working in the day shift could work at night and the men on the night shift could work in daylight hours and partly occasioned by the practice of the company for holidays or in connection with extrahazardous work or as special compensation crediting certain of its employees as a special allowance or bonus with certain additional hours on the books which the men in fact had not worked. Such as to some men made it appear that they had worked a few more hours some days than they had actually worked or a few more hours overtime some weeks than was the actual fact.

The six-hour day at the regular rate and two overtime hours each day, as agreed to between the defendant and its employees in force prior to the institution of the action, was not such a fantastic or unnatural arrangement as to deprive the defendant and its employees from contracting therefor. In fact, in the building trades in this locality for some considerable period the six-hour day was the regular established day. In Walling v. Helmerich & Payne, Inc., 10 Cir., 138 F.2d: 705, decided November 15, 1943, the court held that four hours at regular pay and four hours overtime and five hours at regular pay and five hours overtime daily were not in violation of the Act.

In so far as the defendant may have technically violated the law with respect to certain of its employees claimed by it to be executives and in connection with cookhouse employees or in connection with its bookkeeping system at shift changes or for holidays and extrahazardous work under the evidence any such technical violations ceased long before the trial and in practically all instances before the action was commenced. In any event in each instance such technical violations were by an employer in good faith attempting to comply with the law. Moreover, in the light of McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538, it is not too clear that the defendant was in violation as to its cookhouse employees.

About the time or shortly before this action was commenced the defendant entered into specific agreement with each of its employees that the board should be charged against their weekly earnings instead of being considered additional overtime.

In Walling v. A. H. Belo Corp., 316 U.S. 624, 62 S.Ct. 1223, 1227, 86 L.Ed. 1716, it was recognized that "as a matter of law employer and employee may establish the 'regular rate' by contract." In that case the Supreme Court said:

" * * * When employer and employees have agreed upon an arrangement which has proven mutually satisfactory, we

should not upset it and approve an inflexible and artificial interpretation of the Act * * * it is well to follow the Congressional lead and to afford the fullest possible scope to agreements among the individuals who are actually affected."

Under that vital decision it appears that a contract or agreement of employment between employer and workmen to be valid does not have to be identical to the nth degree in each and every term with a single stereotyped and inflexible pattern.

The method defendant put in force after the action was instituted with respect to bids on tunnels with a guarantee of $0.40 per hour for the first forty hours a week and $0.60 for each overtime hour, which has resulted in average payments to the men up to $15 a day, was disclosed by the pleadings before trial and both parties made such an issue of the trial and have requested decision upon the same.

Under the particular facts involved and law submitted I am satisfied such was not in violation of the Act and no injunction should issue as to such. The court should not prevent the men and the company from so contracting when they so desire.

In the light of the principles of equity and under authority of the decisions interpreting this Act, and in view of the special circumstances surrounding the company and its employees at its Alaskan place of operation, I am satisfied that plaintiff is not entitled to an injunction as asked for.

The action should be dismissed.