WALLING, Administrator of Wage and Hour Division, U. S. Dept. of Labor,
v. CASTLE.
No. 228.

District Court, S. D. Mississippi, E. D.
May 3, 1945.

Amzy B. Steed and Harry Campbell, Jr., both of Birmingham, Ala., for plaintiff.

T. J. Wills, of Hattiesburg, Miss., for defendant.

MIZE, District Judge.

### Findings of Fact

1. The plaintiff, L. Metcalfe Walling, is Administrator of the Wage and Hour Division, United States Department of Labor. The defendant, H. D. Castle, is an individual, residing in Pachuta, Clarke County, Mississippi, within the jurisdiction of this Court.

2. Defendant is now, and at all times hereinafter was, engaged at locations near Pachuta, Mississippi, in manufacturing lumber for shipment in interstate commerce. In the production of the lumber, he employs and has employed, among others, a bookkeeper, Claude Evans, a mechanic, Cecil Mould, two sawyers, Baxter Barton and George Wilson, and two lumber haulers, R. L. ("Tobe") Pruitt and Harvey Gilmore.

3. The defendant has not, since March 31, 1943, maintained records in accordance

with the requirements of the Administrator's regulations promulgated pursuant to Section 11(c) of the Act, 29 U.S.C.A. § 211 (c), in that the time and payroll records fail to show adequately and accurately in every instance with respect to each of the above-named employees: (1) the hours worked each workday; (2) the hours worked each workweek; and (3) the regular rate of pay and basis upon which wages are paid.

The Court finds, further, that the employees, named above, since March 31, 1943, have been employed repeatedly for hours in excess of forty during the workweek without receiving overtime compensation therefor, contrary to Section 7 of the Act, 29 U.S.C.A. § 207. Each of these said employees was, according to the defendant's records, paid on an hourly basis for all hours worked, with proper overtime compensation under the Act for all hours in excess of forty during the workweek. However, the evidence adduced at the hearing reflects that such employees were, in fact, paid on a daily basis, receiving a specified sum each day, without regard to the alleged hourly rates shown on the payroll records and without regard to the true hours worked; and that such employees had received no overtime compensation for hours worked in excess of forty during the workweek.

4. The defendant's violation of the overtime compensation provisions of the Act follows two patterns:

(1) Claude Evans, Baxter Barton, Cecil Mould and George Wilson were employed on so-called "weekly salaries" but were, actually, paid fixed daily wages, since the amount of the "weekly salary" was not paid unless a full workweek of six days was worked and, in case of absence from work, a deduction of one-sixth of the "weekly salary" was made by the defendant for each day lost. During many workweeks such employees have worked in excess of forty hours, but have received no additional compensation as overtime for such hours in excess of forty.

For the purpose of showing compliance with Section 7 in these employments, the defendant inserted on his records certain hourly rates at the end of the workweek. This rate would be computed in such a way that the compensation for straight time at the alleged hourly rate entered on the records, plus compensation for overtime hours at one and one-half times such rate, would

equal the amount previously determined to be due the employee on the basis of his daily wage or so-called "weekly salary". In any given week an employee's compensation could not be determined by applying the so-called "straight time" and "overtime" rates appearing on the records because these rates were not ascertainable until the bookkeeper had been advised at the end of the workweek of the number of days worked by the employee during such workweek and until he had computed the total compensation due the employee for the workweek at the daily wage. To illustrate, George Wilson received $45.00 when he worked a full workweek of six 9-hour days, or the rate of $7.50 for each day worked. During the week ending February 5, 1944, he worked 36 hours, or four days, and was paid $30.00 (4 x $7.50). The defendant's records reflect that, during such workweek, he was compensated on an hourly basis, receiving 83⅓¢ an hour, such rate returning to the employee the sum of $30, or the amount of his total daily wages. During the following week, ending on February 12, 1944, he worked 54 hours, or six days, and was paid $45 (6 x $7.50). The records show that, during such workweek, he was compensated on an hourly basis, receiving 73⅞¢ for straight time hours and $1.10 for overtime hours, such rates returning to the employee the sum of $45, or the amount of his total daily wages. During the workweek ending November 8, 1944, Wilson worked 45 hours, or five days, and was paid $37.50 (5 x $7.50). The records indicate that, during such workweek, he was compensated on an hourly basis, receiving 78¾¢ for straight time hours and $1.18¼ for overtime hours, such rates returning to the employee the sum of $37.50, or the amount of his total daily wages.

The employees were not paid on the basis of the hourly rates appearing on the records, or on the basis of any other hourly rate, but rather were paid a fixed daily wage. The alleged hourly rates carried on defendant's records are fictitious, arbitrary and artificial and are not the hourly rates actually paid for the normal, non-overtime workweek, since the employee receives the same daily wage for overtime hours as he receives for straight time hours.

(2) The other employees with respect to whom there have been violations of Section 7 are the lumber haulers, R. L. ("Tobe") Pruitt and Harvey Gilmore. It is undisputed that these employees have worked

longer than the statutory workweek of forty hours. The defendant's records show that they were paid a daily wage for each 9-hour day worked, whether the first day or the sixth day in the workweek, and that they received no extra compensation as overtime for hours in excess of forty during the workweek. For the purpose of showing compliance with Section 7 in these employments, the defendant inserted on his records alleged "straight time" and "overtime" rates for these employees which were determined by the same method used in setting up similar rates for Mould, Wilson, Barton and Evans. Thus, R. L. ("Tobe") Pruitt, who was paid $5 per day, during the week ending September 20, 1944, in which he worked three days, is shown to have worked 27 hours at an hourly rate of 55⅝¢ per hour, such rate returning to the employee the sum of $15 or the amount of his total daily wages (3 x $5). During the workweek ending October 18, 1944, he worked 54 hours, or six days, and was paid $30 (6 x $5). The records show that, during such workweek, he was compensated on an hourly basis, receiving 49¼¢ for straight time hours and 72½¢ for overtime hours, such rates returning to the employee the sum of $30, or the amount of his total daily wages. During the workweek ending November 8, 1944, Pruitt worked 45 hours, or five days, and was paid $25 (5 x $5). The records show that, during such workweek, he was compensated on an hourly basis, receiving 52⅔¢ for straight time hours and 79¢ for overtime hours, such rates returning to the employee the sum of $25, or the amount of his total daily wages.

Gilmore and Pruitt were not paid on the basis of the hourly rates appearing on the records, or on the basis of any other hourly rate, but rather were paid a fixed daily wage. The alleged hourly rates carried on defendant's records are fictitious, arbitrary and artificial and are not the hourly rates actually paid for the normal, non-overtime workweek, since the employee receives the same daily wage for overtime hours as he receives for straight time hours.

5. In an earlier proceeding instituted on May 21, 1942, said action being styled L. Metcalfe Walling, Administrator of the Wage and Hour Division, United States Department of Labor, Plaintiff, v. H. D. Castle, Defendant,[1] being Civil Action File No. 140 in the files of this Court, the plaintiff sought a permanent injunction against this defendant to restrain him from future violations of the provisions of the Act. On March 31, 1943, following the trial of that action, the Court, although finding that the defendant had violated the Act as charged, denied the Administrator injunctive relief on the ground that an injunction was unnecessary to assure future compliance with the provisions of the statute, and dismissed the complaint. Among other things, that case involved the question of the proper method of paying overtime compensation to employees paid on a daily or weekly basis. The Court held that the payment of a straight daily wage or weekly salary without additional compensation for hours worked in excess of forty during the workweek constituted a violation of Section 7 of the Act; and admonished the defendant against further violations of the statute.

The Court finds that the defendant has continued to violate the Act since the rendition of judgment in Civil Action No. 140 on March 31, 1943, and that such violations are of the same nature as those which the Court had specifically warned the defendant against at the time of the rendition of the said judgment.

On the basis of the foregoing, the Court makes the following:

### Conclusions of Law

1. The Court has jurisdiction over the parties and of the subject matter involved herein. Section 17, Fair Labor Standards Act of 1938, Act of June 25, 1938, c. 676, 52 Stat. 1060, U.S.C.A., Title 29, Section 201 et seq.

2. Defendant's employees are engaged in the production of goods for interstate commerce within the meaning of the Act. United States v. Darby, 1941, 312 U. S. 100, 61 S.Ct. 451, 85 L.Ed. 609, 132 A. L.R. 1430; Kirschbaum v. Walling, 1942, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Walton v. Southern Package Corp., 1944, 320 U.S. 726, 64 S.Ct. 48, 88 L.Ed. 428, reversing and remanding 1943, 194 Miss. 573, 11 So.2d 912; Sondock v. Walling, 5 Cir., 132 F.2d 77, certiorari denied, 1943, 318 U.S. 772, 63 S.Ct. 769, 87 L.Ed. 1142;[1] Walling v. Castle, U.S.D.C.S.D.Miss., Civil Action File No. 140 (1943).

3. Defendant, in paying his employees fixed daily wages without additional compensation for overtime for hours in excess of forty during the workweek, has violated Sections 7 and 15(a) (2) of the Act.

---

[1] No opinion for publication.

For purposes of Section 7, the "regular rate of pay" of these employees is determined in each week through dividing the total daily earnings for the workweek by the number of hours worked in such week; and the employee, having received that rate for each hour worked, is entitled to an additional one-half times such rate for each hour in excess of forty. Overnight Motor Transportation Co. v. Missel, 1942, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682; Warren-Bradshaw Drilling Co. v. Hall, 5 Cir., 124 F. 2d 42, affirmed 1942, 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. 83; Walling v. Helmerich & Payne, 1944, 323 U.S. 37, 65 S.Ct. 11; United States v. Rosenwasser, 1945, 323 U.S. 360, 65 S.Ct. 295.

4. The wage payment practices applicable to the employees mentioned in Conclusion of Law No. 3 are not encompassed by the rule announced by the Supreme Court in Walling v. Belo Corp., 1942, 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716 for two independently sufficient reasons.

In the first place, the defendant and his employees did not agree to the alleged "straight time" rates appearing on defendant's records; actually, such rates could not have been agreed to because they fluctuated from week to week and could be computed by the bookkeeper only after the employee's compensation had been otherwise ascertained on the daily wage basis. Walling v. Green Head Bit & Supply Co., 10 Cir., 1943, 138 F.2d 453; Walling v. Helmerich & Payne, Inc., 10 Cir., 1943, 138 F.2d 705 (holding "1" plan invalid); Patsy Oil & Gas Co. v. Roberts, 10 Cir., 1943, 132 F.2d 826; Walling v. Belikoff, D.C.N.Y., 1944, 59 F.Supp. 167, affirmed 2 Cir., 1945, 147 F. 2d 1008. See also Walling v. Stone, 7 Cir., 1942, 131 F.2d 461; Seneca Coal & Coke Co. v. Lofton, 10 Cir., 1943, 136 F.2d 359, certiorari denied 320 U.S. 772, 64 S.Ct. 77, 88 L.Ed. 462. The agreement between the employer and employee required by the Belo decision is, therefore, entirely lacking in this case. See Seneca Coal & Coke Co. v. Lofton; Patsy Oil & Gas Co. v. Roberts, both supra; Adams v. Union Dime Savings Bank, 2 Cir., 1944, 144 F.2d 290, certiorari denied 323 U.S. 751, 65 S.Ct. 85; Greenberg v. Arsenal Building Corporation, 2 Cir., 1944, 144 F.2d 292. Moreover, even if it be assumed that the employees could have agreed and did agree to the bookkeeping rates, the scheme did not comply with Section 7 since the "straight time" rate specified on the records was not the genuine "hourly rate actually paid for the normal, non-overtime workweek" (Walling v. Helmerich & Payne, Inc., 323 U.S. 37, 65 S.Ct. 11, 13; United States v. Rosenwasser, 323 U.S. 360, 65 S.Ct. 295; Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 577-578, 62 S.Ct. 1216, 86 L.Ed. 1682) but was rather "a fictitious * * * rate consisting of a figure somewhat lower than the rate actually received" and "derived not from the actual hours and wages but from ingenious mathematical manipulations" (Walling v. Helmerich & Payne, Inc., supra 323 U.S. 37, 65 S.Ct. at page 14).

Secondly, the failure of the employment agreement to provide a weekly guaranty decisively distinguishes it from that involved in the Belo case. Walling v. Green Head Bit & Supply Co., 10 Cir., 1943, 138 F. 2d 453; Scott v. Atlas Press Co., W.D. Mich., 1943, 49 F.Supp. 260; Walling v. Livernois, D.C.Mich., 50 F.Supp. 978. Cf. Carleton Screw Products Co. v. Fleming, 8 Cir., 1942, 126 F.2d 537.

5. The defendant has violated Sections 11(c) and 15(a) (5) of the Act by his failure to make, keep and preserve records setting forth adequately and accurately the information required to be recorded by the regulations of the Administrator.

6. The defendant has violated Section 15(a) (1) of the Act by shipping, delivering or selling with knowledge that shipment, delivery or sale thereof in interstate commerce was intended, from his said place of business to other states, goods in the production of which many of his employees were employed in violation of Section 7 of the Act. United States v. Darby, supra.

7. Plaintiff is entitled to a permanent injunction, as prayed, enjoining and restraining defendant from violating the provisions of Sections 15(a) (1), 15(a) (2) and 15(a) (5) of the Act.

8. The defendant is taxed with the costs of the action.

Opinion.

I am of the opinion that the plaintiff is entitled to the permanent injunction and that the cases, Overnight Transportation Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L. Ed. 1682 and Walling v. Helmerich & Payne, 323 U.S. 37, 65 S.Ct. 11, 14, as well as other decisions of the Supreme Court of the United States along these lines, are conclusive upon this court.

The facts of the present case are far from bringing it under the Belo decision.

This law cannot be evaded, regardless of the hardship that it may entail in some cases, and, as was said in the Helmerich case: "The parties to the contract must respect the statutory policy of requiring the employer to pay one and one-half times the regular hourly rate for all hours actually worked in excess of 40." Under the facts of this case and the law, it would be an abuse of discretion for the court to refuse the injunction.

Counsel for plaintiff may prepare an order in accordance herewith. I am making and filing a finding of fact and conclusion of law with the clerk, copy of which is hereto attached.