## CASTLE v. WALLING.
### No. 11445.

Circuit Court of Appeals, Fifth Circuit.
Jan. 30, 1946.

———◆———

T. J. Wills, of Hattiesburg, Miss., for appellant.

Bessie Margolin, Asst. Sol., Wage and Hour Division, Department of Labor, of Washington, D. C., and Amzy B. Steed, Regional Atty., Department of Labor, of Birmingham, Ala., for appellee.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

Appellee, the Administrator of the Wage and Hour Division, United States Department of Labor, instituted this action in the court below, under Section 17 of the Fair Labor Standards Act of 1938, c. 676, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq., to enjoin appellant, H. D. Castle, who operates two portable saw mills near Pachuta, Mississippi, from violating Sections 7(a), 11(c), and 15(a) (1) (2), and (5) of that Act[1] and regulations pursuant to 11(c), found

---

[1] The pertinent sections of the Act of 1938 are as follows:

**Maximum Hours**

Sec. 7(a) "No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce—

"(1) for a workweek longer than forty-four hours during the first year from the effective date of this section.

"(2) for a workweek longer than forty-two hours during the second year from such date, or

in Title 29, Chapter V, Code of Federal Regulations, Part 516. This appeal is from a judgment[2] granting an injunction as prayed.

Section 7(a) of the Act prohibits the employment of a person engaged in the production of goods for commerce for a workweek longer than forty hours unless such employee receives compensation for his employment at a rate not less than one and one-half times "the regular rate" at which he is employed. Section 15(a) of the Act makes unlawful the transportation in commerce of any goods in the production of which a person was employed in violation of Section 7(a), and Section 15(a) makes a violation of Section 7(a) unlawful. Section 17 of the Act gives the district courts jurisdiction to restrain violations of Section 15.

The appellant raises only one question on this appeal: Did the method of paying his employees violate Section 7(a), relating to overtime payments? Appellant questions neither the application of the Act to his business nor the violation of the bookkeeping provisions of the Act.

Appellant's wage payments followed two patterns: Under the first pattern he employed a bookkeeper, two lumber sawyers, and a mechanic on so-called "weekly salaries," but actually he paid them fixed daily wages. These men did not receive the "weekly salary" unless they worked a full workweek of six days, and, for each day's absence from work, they received a deduction of one-sixth of the "weekly salary." During many workweeks each man worked more than forty hours, but he received no additional compensation as overtime for such hours in excess of forty. The hourly rates inserted on defendant's records at the end of each workweek, for the purpose of showing compliance with Section 7(a), were computed in such a way that the compensation for "straight time" at the alleged hourly rate entered on the records plus compensation for "overtime" hours at one and one-half times such rates would equal the amount previously determined to be due the employee on the basis of his daily wage or so called "weekly salary." During any given week no one could determine an employee's compensation by applying the so-called "straight-time" and "overtime" rates appearing on the records, because no one could ascertain them until the bookkeeper knew at the end of the workweek the number of days worked by the employee during such workweek and until he had computed the total compensation due the employee for the workweek at the daily wage.

To illustrate this first pattern of payment, one of the sawyers received $45 when he worked a full workweek of six nine-hour days, or the rate of $7.50 for each day worked. During the week ending February 5, 1944, he worked thirty-six hours, or four days, and was paid $30 (4 multiplied by $7.50). The defendant's records reflect that during such workweek the sawyer was compensated on an hourly

---

"(3) for a workweek longer than forty hours after the expiration of the second year from such date, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

### Investigations, Inspections, and Records

Sec. 11 (c) "Every employer subject to any provision of this Act or of any order issued under this Act shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this Act or the regulations or orders thereunder."

### Prohibited Acts; Prima Facie Evidence

Sec. 15(a) " * * * it shall be unlawful for any person—

"(1) to transport, offer for transportation, ship, deliver, or sell in commerce, or to ship, deliver, or sell with knowledge that shipment or delivery or sale thereof in commerce is intended, any goods in the production of which any employee was employed in violation of * * * section 7. * * *

"(5) to violate any of the provisions of section 11(c), or to make any statement, report, or record filed or kept pursuant to the provisions of such section or of any regulation or order thereunder, knowing such statement, report, or record to be false in a material respect."

[2] The District Court's findings and conclusions are reported 64 F.Supp. 707.

basis, receiving 83⅓¢ an hour, such rate returning to the employee the sum of $30, or the amount of his total daily wages. During the following° week, ending on February 12 1944, he worked fifty-four hours, or six days, and was paid $45 (6 multiplied by $7.50). The records show that during such workweek he was compensated on an hourly basis, receiving 73-⅞¢ for straight-time hours and $1.10 for overtime hours, such rates returning to the employee the sum of $45, or the amount of his total daily wages. During the workweek ending November 8, 1944, he worked forty-five hours, or five days, and was paid $37.50 (5 multiplied by $7.50). The records indicate that during such workweek he was compensated on an hourly basis, receiving 78¾¢ for straight-time hours and $1.18½ for overtime hours, such rates returning to the employee the sum of $37.50, or the amount of his total daily wages.

The second pattern of defendant's wage payments, under which he paid two lumber haulers, does not deviate materially from the first pattern. The only distinction is appellant's claim that he paid them on an hourly basis. The defendant's records show that the haulers received a daily wage for each nine-hour day worked, whether the first day or the sixth day in the workweek, and that they received no extra compensation as overtime for hours in excess of forty during the workweek.

Under both patterns of payment the employees did not receive compensation on the basis of the hourly rates appearing on the records or on the basis of any hourly rate, but they received a fixed daily wage. The alleged hourly rates carried on defendant's records are fictitious: They are not the hourly wages actually paid for the normal, non-overtime workweek, for the employee received the same daily wage for overtime hours as he received for straight-time hours.

Defendant, in paying his employees fixed daily wages without additional compensation as overtime for hours in excess of forty during the workweek, has violated Sections 7 and 15(a) (2) of the Act.[3] For purposes of Section 7, the "regular rate" of pay of these employees was determined in each week by dividing the total daily earnings for the workweek by the number of hours worked in such week;[4] and each employee who received that rate for each hour worked is entitled to an additional one-half times such rate for each hour in excess of forty.[5]

Appellant in support of his contention that his conduct did not violate the Act relies for authority on Walling v. A. H. Belo Corp., 1942, 316 U.S. 642, 62 S.Ct. 1223, 86 L.Ed. 1716. In the Belo case the Supreme Court upheld an employment contract providing that the employer would pay a named amount per hour for the first forty-hours each week, that for time over forty-four hours each week the employer would pay for each hour of work at not less than one and one-half times the basic rate, and that, as a guarantee, the employee would receive weekly, for regular time and for such overtime as the necessities of the business demanded, a sum not less than a named amount. For three reasons the appellant may not rely upon the Belo case: In the first place, the defendant and his employees did not agree to the alleged "straight-time" rates appearing on defendant's records; actually, they could not have agreed to such rates because the rates fluctuated from week to week, and one could compute them only after the employee's compensation had been otherwise ascertained on the daily-wage basis.[6] The agreement between the employer and employee required by the Belo decision is, therefore, entirely lacking in this case.[7] In the second place, if it be assumed that the employees could and did agree to the book-keeping rates, the scheme did not comply with Section 7, since the "straight-time" rate specified on the records was not the genuine "hourly rate actually paid for the normal, non-overtime workweek," but was rather a fictitious * * * rate consist-

---

[3] Warren-Bradshaw Drilling Co. v. Hall, 1942, 317 U.S. 88, 93, 63 S.Ct. 125, 87 L.Ed. 83.

[4] Overnight Motor Transp. Co. v. Missel, 1941, 316 U.S. 372, 580, 62 S.Ct. 1216, 86 L.Ed. 1682; Walling v. Helmerich & Payne, Inc., 1944, 323 U.S. 37, 40, 41, 65 S.Ct. 11; United States v. Rosenwasser, 1944, 323 U.S. 360, 364, 65 S. Ct. 295.

[5] Overnight Motor Transp. Co. v. Missel, supra.

[6] Walling v. Green Head Bit & Supply Co., 10 Cir., 1943, 138 F.2d 453, 455.

[7] Seneca Coal & Coke Co. v. Lofton, 10 Cir., 1943, 136 F.2d 359, 362; Patsy Oil & Gas Co. v. Roberts, 10 Cir., 1943, 132 F.2d 826, 827.

926

ing of a figure somewhat lower than the rate actually received" and "derived not from the actual hours and wages but from ingenious mathematical manipulations."[8] Finally, the failure of the employment agreement to provide a minimum weekly guarantee after fixing straight-time and over-time rates, or adopting some method by which these could be ascertained, decisively distinguishes appellant's methods from that involved in the Belo case.[9]

 Appellant may not, in good faith, contend that his violations were unintentional or inadvertent. His record is one of repeated violations after court warning. In an earlier proceeding instituted May 21, 1941, the appellee sought a permanent injunction against appellant to restrain him from future violations of the very type involved in this case. In that proceeding the court found that none of appellant's employees received overtime compensation for hours worked in excess of the applicable maximum hours; although appellant had violated the Act, the court denied an injunction because appellant impressed the court with his honest and bona fide intentions to comply with the Act. He now admits that the court in the earlier action instructed him as to the proper method of paying compensation to his employees. Under the facts of this case an injunction clearly is the proper remedy.

Judgment affirmed.

8 Walling v. Helmerich & Payne, Inc., supra, 323 U.S. at pages 41, 42, 65 S. Ct. at pages 13, 14.

9 Walling v. Green Head Bit & Supply Co., 10 Cir., 1943, 138 F.2d 453, 455; Scott v. Atlas Press Co., D.C.

1943, 49 F.Supp. 260, 261; Walling v. Livernois, D.C.1943, 50 F.Supp. 978, 980; Walling v. Youngerman-Reynolds Hardwood Co., 1944, 325 U.S. 419, 426, 65 S. Ct. 1242, 1250.