Arthur J. GOLDBERG, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

EVERBEST MEAT PRODUCTS, INC., a Corporation, Defendant.

Civ. A. No. 10389–M.

United States District Court
S. D. Florida,
Miami Division.

June 7, 1961.

534

Beverley R. Worrell, Birmingham, Ala., for plaintiff.

Myers, Heiman & Kaplan, Miami, Fla., for defendant.

WHITEHURST, District Judge.

This cause coming on to be tried in open court on May 2, 1961, in Miami, Florida, and the Court having heard the testimony of witnesses and the argument of counsel and being otherwise sufficiently advised in the premises hereby makes the following findings of fact and conclusions of law:

## I

### Findings of Fact

1. This is an action brought by the Secretary of Labor seeking a recovery against defendant for unpaid overtime compensation allegedly due defendant's employee, Edmund R. Peter, under the provisions of the Fair Labor Standards Act of 1938, as amended (29 U.S.C.A. § 201 et seq.), hereinafter referred to as the Act.

2. The following facts were stipulated by the parties in a pre-trial written stipulation and by oral stipulation made in open court during the progress of the trial:

(a) Defendant, Everbest Meat Products, Inc., is now, and at all times pertinent to this action was, a corporation organized and existing by virtue of the laws of the State of Florida having its principal place of business at 60 N.E. 11th Street, Miami, Dade County, Florida, within the jurisdiction of this court and is and at all times pertinent was, engaged in the purchasing, processing, sale and distribution of meat and meat products.

(b) During the period from on or about August 1, 1958, to on or about April 7, 1960, the defendant employed Edmund R. Peter, as a butcher in and about its said place of business at Miami. Throughout the period of his employment the said Edmund R. Peter regularly worked 49 hours each week. Said Peter was given the usual legal holidays and in addition received a two-week vacation in June of 1959. Throughout his employment Edmund R. Peter received a weekly salary of $90 from defendant.

(c) On July 15, 1960, the following letter was received by the Wage and Hour and Public Contracts Divisions, United States Department of Labor:

"July 14, 1960
"402 N.W. 100th St.
"Miami, Fla.
"Secretary of Labor
"U. S. Department of Labor
"Wage & Hour & Public
 Contracts Div.
"1200 S.W. 1st Street, Room 107
"Miami 35, Florida

"Dear Sir:

"In reply to my letter of the 13th inst., requesting back pay against the Everbest Meat Products # 60 N.E. 11th Street, the Wage & Hour earning board has concluded their investigation against Everbest Meat Products. And if necessary request you take legal action to collect this back pay.

"Yours truly
"Edmund R. Peter
"Phone Pl–1–3548"

(d) The letter set out in paragraph (c) above was not prepared or signed by Edmund R. Peter personally but was prepared and signed at his direction by his brother and was thereafter mailed by the said Edmund R. Peter to the address indicated on the letter.

(e) Throughout the period pertinent to this action the defendant regularly received each week substantial quantities of

meat and meat products delivered from sources in other states to defendant's place of business in Miami where it was received, unloaded and stored.

(f) On the dates shown below the defendant shipped and delivered to third persons within the State of Florida, which third persons then shipped and delivered to the destinations shown the indicated quantities of meat or meat products which were prepared and processed at defendant's establishment:

| Name | Destination | Date | Amount |
| --- | --- | --- | --- |
| B. W. Vigneault | Aruba, N. W. I. | 2/26/59 | $155.50 |
| E. B. Fields | Aruba, N. W. I. | 3/18/59 | 15.85 |
| " | " | 3/18/59 | 46.45 |
| " | " | 3/18/59 | 34.32 |
| " | " | 3/18/59 | 190.82 |
| T. F. Hagerty | " | 4/8/59 | 487.85 |
| " | " | 4/8/59 | 106.36 |
| John H. Rees | " | 4/8/59 | 212.79 |
| " | " | 4/8/59 | 159.68 |
| " | " | 4/8/59 | 155.45 |
| " | " | 4/8/59 | 96.63 |
| Godfried Croes | " | 7/30/59 | 236.42 |
| Walter F. Ratcliff | " | 7/30/59 | 322.44 |
| R. T. Pearson | " | 8/20/59 | 102.26 |
| J. H. Bridges | " | 8/20/59 | 390.15 |
| F. J. Dunbar | " | 8/20/59 | 350.93 |
| D. A. Goodwin | " | 8/20/59 | 100.75 |
| H. J. Richardson | " | 11/11/59 | 193.38 |
| J. M. Adams | " | 11/11/59 | 92.87 |
| D. V. Thompson | " | 11/20/59 | 49.11 |
| T. F. Hagerty | " | 11/20/59 | 411.83 |
| J. M. Dullum | Montego, Jamaica | 12/4/59 | 531.26 |
| C. C. Dunlap | Aruba, N. W. I. | 12/16/59 | 62.48 |
| W. E. Meisenheimer | " | 12/16/59 | 251.84 |
| H. C. Miller | " | 12/16/59 | 90.38 |
| K. L. Weill | " | 12/16/59 | 202.63 |
| J. V. Richardson | " | 12/16/59 | 137.08 |
| C. A. Burton | Western Springs, Ill. | 3/1/60 | 200.98 |

(g) Throughout the period pertinent to this action the fat, bones and offal produced as a result of defendant's operations were collected and sold to the Tallowmaster Company, Miami Springs, Florida, H & H Packers, Inc., Hialeah, Florida, and the Florida Processing Company, Miami, Florida.

3. The facts are in dispute with regard to Edmund R. Peter's duties in connection with receiving the incoming meats and meat products referred to above in Finding 2(e). The Court finds from a preponderance of the evidence that the handling of incoming meats and meat products prior to final storage in defendant's coolers was usually and customarily performed by other employees of defendant corporation, not by Peter. This employee's participation in the receiving activities pertinent here, if any, was casual, occasional and sporadic.

4. There is also a dispute as to Peter's participation in the preparation of the orders set out above in Finding 2(f). The Court finds, however, that Peter as-

sisted Edmund Stinavage, another butcher of defendant, in the filling of these orders by trimming and cutting the meat and meat products and wrapping the orders for shipment on the dates indicated.

5. Insofar as a determination of this case is concerned, the most significant aspect of Peter's duties was his regular participation in the trimming and cutting of meat at defendant's establishment. It is undisputed in the evidence that Peter, as a regular and necessary part of his duties trimmed fat, bone and offal from the meat being processed at defendant's establishment. The fat, bone and offal so trimmed by Peter and other butchers were collected in large cans at defendant's establishment and thereafter sold and delivered to processor as described in Finding 2(g) above. It is not possible to determine from the evidence in this case the precise amount of time which Peter devoted each day to the trimming operation. Suffice it to say, however, that the trimming operation was a regular part of this employee's daily duties and occupied a substantial portion of his work time each week.

6. The fat, bone and offal produced as a result of defendant's operation which were collected and sold as specified in Finding 2(g) above were converted by the processing companies into greases, tallow, soap, animal food and other similar products. In the case of the Tallowmaster Company, the entire production of this company during the pertinent period though sold f. o. b. Miami was shipped to Central and South American countries. In the case of the Florida Processing Company, approximately 75% of its finished products though sold f. o. b. Miami were regularly shipped to other states during the pertinent period. The operation of H & H Packers, Inc., was somewhat different from that of the other two processors involved in this case, in that this company engages in the production of edible fats and shortening which are sold entirely to customers intrastate. However, the evidence discloses that throughout the period pertinent to this action H & H Packers, Inc., regularly sold f. o. b. Miami approximately 25% of its production of edible fats to the aforesaid Florida Processing Company which used this edible fat in its operations as described above.

7. It was the testimony of Max Kornblum, president of defendant corporation, that although he had been engaged in the meat business for some 35 years and had at various times conversed and conferred with officials of the Tallowmaster Company, Florida Processing Company and H & H Packers, Inc., and knew that the fat, bone and offal sold by defendant to the aforesaid companies were converted into the various products referred to in Finding 6 above, neither he nor any other official of defendant corporation had ever been told that the aforesaid companies were shipping substantial quantities of their finished products to other states and foreign countries and had no knowledge of the ultimate disposition being made of these products.

II

Conclusions of Law

1. The Court has jurisdiction of the subject matter and of the parties in this cause.

2. The Act provides that the Secretary of Labor may bring an action of the type here involved "when a written request is filed by any employee with the Secretary" (29 U.S.C.A. § 216(c) ). There is no requirement in the Act that the "written request" must be prepared or signed by the aggrieved employee and where, as here, it appears the request was prepared and signed by another at the request, under the direction, and with full knowledge of the aggrieved employee, the terms of the statute have been sufficiently met. Accordingly, this Court holds that the written request in the instant case is legally sufficient to confer upon the Secretary of Labor the necessary authority to bring this suit.

3. Edmund R. Peter, by virtue of his duties in connection with the trimming of fat, bone and offal from the meat processed at defendant's establishment,

which fat, bone and offal were subsequently sold and delivered to processors within the State of Florida and thence converted into other products by these processors, substantial quantities of which other products were shipped and delivered to destinations outside the State of Florida, was engaged in the production of goods for commerce within the meaning of the Act throughout the period of his employment by defendant. Tilbury v. Rogers, D.C.W.D.La.1954, 123 F.Supp. 109, affirmed per curiam Tilbury v. Mitchell, 5 Cir., 1955, 220 F.2d 757. In view of the foregoing conclusion, it is unnecessary for the Court to consider other aspects of Peter's duties relative to his participation in handling or working upon goods received or shipped at defendant's establishment.

■ 4. Under the facts of this case it is of no significance that defendant professes a lack of knowledge of the ultimate disposition being made by the Tallowmaster Company, Florida Processing Company and H & H Packers, Inc., of the fat, bone and offal sold to them by defendant. The decisions in this and other Circuits make it abundantly clear that an employer "can not assume an attitude of detached aloofness from his product, ignoring the ultimate purpose or use for which it is intended. If he knows, or reasonably should know, that in the normal and ordinary course of business his product will move in interstate commerce, or if he intends or expects that it will so move, either alone or in connection with some other product, he is a producer of goods for commerce within the meaning of the Act. Actual knowledge that his product will so move is not essential." Tobin v. Celery City Printing Co., 5 Cir., 1952, 197 F.2d 228, 229. If the defendant in this case "did not know, it was because he did not look, or looking, did not

see, or want to see what was so plainly there." Mitchell v. Raines, 5 Cir., 1956, 238 F.2d 186, 188. As a matter of just and reasonable inference, the Court finds in the instant case that defendant should have known its by-products were being rendered into other products, substantial quantities of which other products were being shipped to destinations in other states and in foreign countries.

■ 6. The payment of a weekly salary to an employee who regularly works hours in excess of 40 each week does not constitute compliance with the overtime provisions of the Act and where such practice has been followed, the employee is entitled to receive additional compensation at one and one-half times his regular rate for all hours worked in excess of 40 each week. Overnight Motor Transportation Co., Inc. v. Missel, 1941, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682; Castle v. Walling, 5 Cir., 1946, 153 F.2d 923.

7. To determine the compensation due under the rationale of the Overnight case, supra, Edmund R. Peter's regular rate must be determined by dividing the number of hours worked each week by this employee (49 hours each week) into the weekly salary received ($90 per week) which division results in his regular hourly rate of $1.8637. This employee is due an additional $8.37 each week $\frac{(1.8637 \times 9)}{2}$ for unpaid overtime compensation. Allowing for legal holidays during the period and a two-week vacation taken by Peter in June of 1959, the employee is due the sum of $619.38 (74 weeks x $8.37) for unpaid overtime compensation. Interest at 6% (computed from the median point of Peter's employment) in the amount of $68.13 is also recoverable together with the costs of this action.

Let judgment be entered accordingly.