**UNITED STATES of America, Appellee,**

v.

**KLINGHOFFER BROS. REALTY CORP., Irving Jacobson and Albert Klinghoffer, Defendants-Appellants.**

**No. 300, Docket 25692.**

United States Court of Appeals Second Circuit.

Argued April 12, 1960.

Decided Oct. 5, 1960.

Rehearings Denied Jan. 30, 1961.

---

Sydney Krause, of Krause, Hirsch, Gross & Heilpern, New York City (Alex J. Glauberman, New York City, on the brief), for defendants-appellants.

Elliott Kahaner, Chief Asst. U. S. Atty., E. D. N. Y., Brooklyn, N. Y. (Cornelius W. Wickersham, Jr., U. S. Atty., and Nathan K. Trynin, Asst. U. S. Atty., Brooklyn, N. Y., on the brief; Harold C. Nystrom, Acting Sol. of Labor, Bessie Margolin, Asst. Sol., and Robert E. Nagle, Atty., U. S. Dept. of Labor, Washington, D. C., of counsel on rehearing), for appellee.

Before SWAN, CLARK, and FRIENDLY, Circuit Judges.

CLARK, Circuit Judge.

Defendant Klinghoffer Bros. Realty Corp. and its codefendant officers, Albert Klinghoffer, president, and Irving Jacobson, vice-president, appeal from convictions after trial by jury on three counts of violating the Fair Labor Standards Act, 29 U.S.C. §§ 206(a), 207(a), 211(c), 215(a), 216(a). The prosecution arose from the action of the defendant corporation in requiring four employees to perform additional overtime work for the benefit of a financially embarrassed affiliate, under an arrangement whereby the employees were not compensated for such additional overtime until the affiliate emerged from a bankruptcy proceeding. The jury below found that this arrangement violated the $1.00 minimum wage requirement of 29 U.S.C. § 206 and the overtime provisions of § 207(a), and was accompanied by the keeping of false records in violation of § 211(c).

*The factual background.* The defendant corporation is one of ten corporations having the same officers and shareholders and constituting the "Rotobroil group," an enterprise generally engaged in the manufacture and sale of electric broilers. On April 7, 1957, four of these companies, following certain financial reverses, filed petitions for arrangement under Chapter XI of the Bankruptcy Act. One of the companies so filing was Jay Kay Metal Specialties Corporation, a manufacturing concern occupying five of six floors in a building at 3408 Northern Boulevard, Queens, as sublessee of the defendant corporation, which was lessee of the entire building. On April 7, 1957, Jay Kay Metal, as an economy measure, terminated the services of a detective agency which had previously been employed to furnish guards for the property at 3408.

To maintain a guard service for that property the defendants then determined to utilize the services of four guards regularly employed by defendant Klinghoffer Bros. Realty Corp. at a nearby building owned and managed by said defendant at 3300 Northern Boulevard. On or about April 12, 1957, defendant Jacobson told the guards that the company's financial embarrassment made it necessary for them to put in some additional work at 3408 without compensation. The guards

refused to accede to this, on the ground that it was tantamount to a cut in pay. An understanding was then reached that the guards would put in approximately six additional overtime hours per week at 3408, and that compensation would be forthcoming later on. There is some conflict in the testimony as to the definiteness of this commitment to pay at a future date, but the intention seems to have been that the guards would be paid on termination of the bankruptcy proceedings involving Jay Kay Metal. This arrangement was undertaken with the knowledge and approval of defendant Albert Klinghoffer. The arrangement was terminated about July 30, 1957, because the guards refused to go along with it any further.

For each week during which the arrangement was in effect, the guards turned in time cards showing the amount of straight- and over-time worked at 3300. Each card, after being checked by the supervisor, was forwarded to the payroll department, which issued payroll checks in the name of the corporate defendant on the basis of the number of hours reported. The time worked at 3408 was not marked down on these time cards, and does not seem to have been reported to the defendants until December 1958—seventeen months after the employment in question. At that time the defendants, who had already been indicted, invited the guards to submit schedules of the hours worked at 3408 and to accept payment therefor by checks issued in the name of Jay Kay Metal. All of the guards accepted this invitation except for guard Conroy, who declined upon the advice of the district attorney. This belated payment was made about a month after the plan of arrangement of Jay Kay Metal in the Chapter XI proceedings was confirmed. Aside from the schedules just referred to, the only record which was kept of the overtime at 3408 was a daily log record maintained by the guards, but which does not appear to

have been in the possession of the employer.

■ *Count 1.* Count 1 charges that the failure promptly to pay any wage for the additional overtime put in at 3408 violates the $1.00 minimum wage requirement of 29 U.S.C. § 206(a). But no guard received less than $67.20 for a 40-hour week, and no guard worked more than 67 hours. Thus the average weekly wage received by the employee met the requirements of § 206(a). The government argues, nevertheless, that all of such weekly wage was allocated by agreement to the work done at 3300, so that the work at 3408 was performed without pay. Therefore, it is contended, the time worked at 3408 was paid for at a rate of $0.00 per hour, or an amount less than the $1.00 minimum requirement.

If the total wage paid to each guard in this case during any given week is divided by the total time he worked that week, the resulting average hourly wage exceeds $1.00 for every week and every guard involved. We believe this is all that is necessary to meet the requirements of § 206(a). The Congressional purpose underlying that section was to guarantee a minimum livelihood to the employees covered by the Act.[1] Payment at intervals shorter than weekly is unusual and is not necessary to enable the employees to meet their customary obligations. Accordingly the Congressional purpose is accomplished so long as the total weekly wage paid by an employer meets the minimum weekly requirements of the statute, such minimum weekly requirement being equal to the number of hours actually worked that week multiplied by the minimum hourly statutory requirement. Hence so long as this weekly requirement is met, § 206(a) is not violated if the parties by agreement treat all of that wage as being paid for part of the work and regard certain other work as done for nothing. Hence the conviction under Count 1 must be reversed for insufficiency in law, and the

1. Cf. Conference Report, H.R.Rep. No. 2738, 75th Cong., 3d Sess. 28 (1938); Sen.Rep. No. 884, 75th Cong., 1st Sess. 1–3 (1937); H.R.Rep. No. 1452, 75th Cong., 1st Sess. 8–9 (1937).

indictment under this count is ordered dismissed.

■■ *Count 2.* Count 2 charges a violation of the requirement of § 207(a) that an employer pay employees such as the guards in this case not less than one and one-half times their regular rate of pay for every hour in excess of forty. 29 U.S.C. § 203(d) defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." The corporate defendant was such an "employer" of the four guards with respect to the overtime at 3408, regardless of whether the actual employer, as that term is used in the law of contracts, was itself or Jay Kay Metal. For the corporate defendant, in making available its own guards to its financially embarrassed affiliate, either employed those guards itself or acted "directly or indirectly in the interest of" Jay Kay Metal, the other possible employer. Accordingly the failure of the corporate defendant to pay promptly the statutory overtime compensation was a violation of 29 U.S.C. § 207(a). The vague deferred compensation plan which appears to have been agreed upon is not sufficient to meet the requirements of that section.

While the FLSA does not expressly set forth a requirement of prompt payment, such a requirement is clearly established by the authorities, and is codified in interpretative regulation, 29 CFR § 777.2 (a), construing 29 U.S.C. §§ 206, 207, to require payment in cash or negotiable instruments payable at par, except as otherwise stated in § 3(m), 29 U.S.C. § 203(m).

In Fleming v. Pearson Hardwood Flooring Co., D.C.E.D.Tenn., 39 F.Supp. 300, defendant employer, in payment of both regular and overtime wages, issued to its employees scrip lacking a regular redemption date and not uniformly negotiable at par. The court held that the minimum wage and overtime compensation prescribed by the FLSA must be paid in cash or by negotiable instruments payable at par, except as otherwise permitted by § 3(m). The scrip issued did not comply with that requirement, and the defendant was held to have violated 29 U.S.C. §§ 206, 207, and 215(a) (2).

The guards in the instant case did not even receive scrip. All they had was a vague understanding that at some indefinite future date, related to the termination of the arrangement proceedings, they would be taken care of. In fact the understanding as to when payment would be made does not seem to have been clearly articulated. At the time the present prosecution was commenced they had been unpaid for approximately a year. Final payment was not made until seventeen months after the rendering of the services in question. Such delayed payment does not meet the requirements of § 207(a).

In Rigopoulos v. Kervan, 2 Cir., 140 F.2d 506, 507, 151 A.L.R. 1126, this Court stated: "Section 7 of the Act, 29 U.S. C.A. § 207, plainly contemplates that overtime compensation shall be paid in the course of employment and not accumulated beyond the regular pay day." There, this Court held that an employer, by making tardy restitution of the amount of overtime compensation due, did not relieve himself of the liability for liquidated damages which had accrued on the original failure to pay. The present case is somewhat different because of the apparent understanding that the overtime compensation would be paid eventually. But this difference is without legal significance, because the function of the FLSA is to determine what types of contract between employer and employee will be tolerated. Accordingly the statutory requirement of prompt compensation cannot be waived by agreement.

In Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707, 65 S.Ct. 895, 902, 89 L.Ed. 1296, the Supreme Court, in invalidating an employee's waiver of his right to liquidated damages under 29 U.S.C. § 216(b), described the liquidated damage provision as a "Congressional recognition that failure to pay the statutory minimum *on time* may be so detrimental to maintenance of the minimum standard of living * * * that double payment must

be made in the event of delay in order to insure restoration of the worker to that minimum standard of well-being." (Emphasis added.) The subsequent enactment of 29 U.S.C. § 216(c) constitutes a Congressional revision of that decision in the interest of encouraging voluntary restitution, and does not detract from the validity of the statement quoted above. See Sen.Rep.No.640, 81st Cong., 1st Sess., 1949 U.S.Code Cong.Serv. 2241, 2247–49.

Further recognition of the necessity of prompt payment may be found in Keen v. Mid-Continent Petroleum Corp., D.C. N.D.Iowa, 63 F.Supp. 120, 128, affirmed 8 Cir., 157 F.2d 310, and Walling v. Livernois, D.C.E.D.Mich., 50 F.Supp. 978, 980.

■■ Both of the individual defendants knew of the arrangement for deferred compensation and were instrumental in putting it into effect. The jury was justified in finding that these actions were taken deliberately and, if not in intentional disregard of the statute, at least with reckless indifference toward it. This willfulness on the part of the individual defendants may be imputed to the corporate defendant. We find that the charge to the jury on the question of willfulness was satisfactory and that the jury's verdict was supported by substantial evidence.

In its charge to the jury the court defined willfully as "performing an act knowing it to be wrong or being aware of the wrong. To do a thing inadvertently, accidentally, or by honest mistake is not a wilful act." Thus the jury was properly instructed to acquit if it found that the defendants either (1) did not intentionally perform the acts constituting the violation of the statute or (2) intentionally performed such acts in the honest, but mistaken, belief that they were complying with the statute.

The jury subsequently requested the court to "clarify the meaning of intentional falsification as it relates to Count 3 of the indictment." In response to this request the court gave an instruction on willfulness which failed to indicate that an honest mistake as to law, made after diligent inquiry, would be a valid defense. The term "willfully," as used in the FLSA, includes such a defense, and this instruction was therefore erroneous. But since the erroneous instruction was limited to Count 3, the conviction under Count 2 must be affirmed.

■■ *Count 3.* Count 3 charges an intentional falsification of records in violation of 29 U.S.C. §§ 211(c), 215(a) (5), and 216(a). The court charged that the jury could find the defendants guilty under this count if it found that the records kept by defendant Klinghoffer Bros. Realty Corp. failed to state the time worked at 3408. If the actual employer for such time, as a matter of contract law, was Jay Kay Metal, however, the records kept by the corporate defendant accurately showed the time which the guards worked for that defendant. "False" means failing to show the true agreement between the parties. Accordingly the jury should have been instructed to acquit on Count 3 if the 3408 overtime was performed with the understanding that Jay Kay Metal would be deemed the employer for such overtime. For though Jay Kay Metal may have been a joint employer with the corporate defendant, that fact did not impose on the latter a duty to keep in its records notation of work which was done for Jay Kay Metal as actual employer, and which is imputed to the corporate defendant only as a matter of statutory policy. The conviction under Count 3 is reversed. On a retrial, if the government presses for one, instructions should be given as indicated above.

■■ Other contentions of the appellants lack substance. We have examined the grand jury minutes and find no abuse of discretion in the court's refusal to make them available to the defendants. See United States v. Spangelet, 2 Cir., 258 F.2d 338. Defendants on the trial requested certain documents on the ground that they had been used to refresh the recollection of a government

witness. To the extent that the documents were so used at trial, the request was granted. On this appeal the defendants assert for the first time that the Jencks statute, 18 U.S.C. § 3500, entitled them to a broader inspection. The failure specifically to assert rights under the Jencks statute while on trial is fatal to this claim. The admission of testimony of prior investigations appears erroneous, but the defect was waived. Other asserted errors are either groundless or not prejudicial.

Convictions on the first count reversed and that count dismissed; convictions on the second count affirmed; convictions on the third count reversed and proceedings remanded for action not inconsistent with this opinion.

On Petitions for Rehearing

CLARK, Circuit Judge.

The defendants and the United States of America both petition for rehearing. We shall first consider the defendants' petition, which may be disposed of quickly.

Defendants seek reconsideration of the court's conclusion that their alleged right to inspection under the Jencks statute, 18 U.S.C. § 3500, was lost for lack of specific reference. We agree that "no ritual of words" is necessary to invoke the rights granted by the statute. See Howard v. United States, 108 U.S.App. D.C. 38, 278 F.2d 872, 874. In the present case, however, defendants' request was for inspection of documents used by a government witness to refresh his recollection, and the court undertook to grant the request. The contention now is that all reports should have been delivered up; but at the time the defendants said nothing to alert the court to the fact that they were making a claim under the Jencks statute. Since the de-

fendants failed to urge the asserted error at a time when the court could have made the necessary correction, the contention comes too late on appeal to show reversible error. The point is one of ordinary trial procedure, not of interpretation of the new statute. Defendants' petition is denied.

The United States of America petitions for rehearing on the reversal of the conviction under Count 1 for failure to pay minimum wages. We concluded that 29 U.S.C. § 206(a) was not violated, because each employee received during each week compensation equal to or exceeding the product of the total number of hours worked and the statutory minimum hourly rate. The government contends that this holding runs counter to authority that payments for certain hours in excess of the statutory minimum cannot be reallocated to make up for deficiencies in payments made for other hours during the week. In general and except to the extent stated below we do not quarrel with the cases on which the government relies. We think, however, that their meaning cannot be stated so broadly.

The government first relies on a series of cases arising under the overtime provisions of 29 U.S.C. § 207(a) and holding that payments for straight time in excess of the statutory minimum wage cannot be reallocated to overtime hours to make up for deficiencies in overtime payments.[1] The language and function of § 207(a) differ from § 206(a), and the overtime cases cited by the government are not controlling on the interpretation of the minimum wage provision. Section 207(a) requires overtime payments to be made at one and one-half times the "regular rate." A reallocation of payments in excess of the statutory minimum to make up for overtime deficiencies would deviate from this statutory requirement

1. Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682; Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 93, 63 S.Ct. 125, 87 L.Ed. 83; Yellow Truck & Coach Mfg. Co. v. Edmondson, 6 Cir., 155 F.2d 367; Adams v. Union Dime Sav. Bank, 2 Cir., 144 F.2d 290, certiorari denied 323 U.S. 751, 65 S.Ct. 85, 89 L.Ed. 602; Bumpus v. Continental Baking Co., 6 Cir., 124 F. 2d 549, 140 A.L.R. 1258, certiorari denied Continental Baking Co. v. Bumpus, 316 U.S. 704, 62 S.Ct. 1305, 86 L.Ed. 1772.

by limiting overtime liability to one and one-half times the minimum, rather than one and one-half times the "regular," rate. The particular wording of § 207 (a), which is the basis of the overtime cases, is not found in § 206(a), which simply requires minimum wage payments "at the following rates—(1) not less than $1 an hour; * * *."

The existence of different rules regarding reallocation under § 206(a) and § 207(a) is an understandable result of the different functions of those two sections. The former is directed at providing a minimum living standard, and can be satisfied so long as the weekly wage is sufficient to provide that minimum. Section 207(a), on the other hand, is concerned also with deterring long hours by making such long hours more expensive for the employer. This purpose can be successfully accomplished only if the base for computing "time and a half" is the regular, rather than the minimum, wage. Otherwise an employer whose regular rate was one and one-half times the minimum would face no incentive to avoid overtime.

The government also relies on cases involving a failure to allocate an amount equal to the statutory minimum to such "borderline" periods as lunch on the job, preparation for work, etc., which may be determined in certain circumstances to constitute compensable periods of employment. A failure to allocate at least the statutory minimum wage to these compensable "borderline" work periods has been held to violate § 206(a), even though the wage paid for the usual work hours exceeds the statutory minimum by an amount sufficient to make up for the deficiency in the "borderline" work time.[2] The Stock case, cited in footnote 2, may rest on the ground that when an employer has failed to pay a bargained-for hourly wage, minimum or otherwise, for a compensable period of employment,

he has of course breached his contract. To the extent that the cited cases go beyond this, my brothers are unwilling to follow them. For my part, however, I believe they may be justified on the ground that a contrary rule would deprive the employees of their bargained-for right to payment in excess of the minimum for the usual work hours. But I find it unnecessary now to pass final judgment on this line of cases, since the present case is sufficiently distinguishable in that the hours for which no payment was received were clearly part of the compensable work week and were recognized as such. Under these circumstances the agreement to work certain additional hours for nothing was in essence an agreement to accept a reduction in pay. So long as the reduced rate still exceeds $1 an hour, an agreement to accept reduced pay is valid, notwithstanding 29 U.S.C. § 218. White v. Witwer Grocer Co., 8 Cir., 132 F.2d 108. Such an agreement does not become illegal merely because it takes the form of additional hours worked without compensation, rather than of an express reduction of the hourly rate.

The prosecution also stresses that the position it advocates is that taken consistently by the Department of Labor over a period of years as shown by published opinions of the Administrator of the Wage-Hour Division, even though earlier rulings had been to the contrary. We do not stress this change in position further than to point out that the government's present position, on its own showing, is not a necessary one, or one buttressed by precedents; and for the reasons we have indicated it should not be the interpretation given a penal statute. The desirable results urged seem to us amply secured under § 207(a), without extension of § 206(a) to this form of agreed wage reduction. The government's petition is therefore also denied.

2. F. W. Stock & Sons v. Thompson, 6 Cir., 194 F.2d 493; Mitchell v. Stewart Bros. Const. Co., D.C.Neb., 184 F.Supp. 886; Mitchell v. Excello Battery Co. (not officially reported), 13 WH Cases 139, 31 CCH Lab. Cases ¶ 70,423 (D.C.M.D.Ga. 1956).