**Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**UNIQUE RACQUETBALL AND HEALTH CLUBS, INC. and Seyd Khayami and John Gerweck, Individually, Defendants.**

**No. CV 82–0644.**

United States District Court, E.D. New York.

Jan. 15, 1987.

---

Jay S. Berke, Regional Solicitor by James A. Magenheimer, U.S. Dept. of Labor, New York City, for plaintiff.

Reynolds, Caronia & Gianelli by James T. Reynolds, Hauppauge, N.Y., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

WEXLER, District Judge.

This action came to trial before this Court on February 7 and 8, 1985. The trial resumed on February 26, 1985, but the defendants failed to appear. The Court ordered a default judgment, and an inquest hearing was held during the afternoon of February 26, 1985. On appeal, the Second Circuit Court of Appeals specifically affirmed the default, but remanded the case to this Court to afford the defendants a hearing concerning what findings of fact, conclusions of law, and judgment should be rendered. *Brock v. Unique Racquetball and Health Clubs, Inc.*, 786 F.2d 61 (2d

Cir.1986). Pursuant to the ruling of the Second Circuit, hearings were held on July 2 and September 17 and 19, 1986.

### FINDINGS OF FACT

1. Defendant Unique Racquetball and Health Clubs, Inc. ("Unique Racquetball" or "defendant corporation") is and at all times hereinafter mentioned was a corporation organized under and existing by virtue of the laws of the State of New York, having its corporate office at 55 Jericho Turnpike, Jericho, New York, within the jurisdiction of this Court, and at all times hereinafter mentioned was engaged in the operation of racquetball and health clubs at four locations in Nassau and Suffolk Counties.

2. Defendant Seyd Khayami resides at 16 Pheasant Run, Old Westbury, New York, within the jurisdiction of this Court and is, and at all times hereafter was, the President and owner of defendant corporation.

3. Defendant John Gerweck resides at 41 Lowland Road, Levittown, New York, within the jurisdiction of this Court, and is, and at all times hereinafter mentioned was, the Secretary of defendant corporation.

4. At all times relevant to this proceeding, defendant Khayami was joint owner of defendant corporation with his wife, and served as President. Defendant Gerweck was the Secretary of the corporation. Both individuals are Ph.D. graduates in economics from Pennsylvania State University.

5. Defendant Khayami is, and at all times hereinafter mentioned was, in active control and management of defendant corporation, regulated the employment of all persons employed by said corporation, acted directly and indirectly in the interest of defendant corporation in relation to said employees and was thus an employer of said employees within the meaning of the Fair Labor Standards Act of 1938, as amended, hereinafter called the "Act".

6. Defendant Gerweck is, and at all times hereinafter mentioned was, in active control and management of defendant corporation, regulated the employment of all persons employed by said corporation, acted directly and indirectly in the interest of defendant corporation in relation to said employees and was thus an employer of said employees within the meaning of the Act.

7. Each of the four racquetball and health clubs in question rents indoor racquetball courts by the hour to members and their guests. Each of the clubs has numerous racquetball courts, separate locker rooms for males and females, and other related facilities.

8. During the period of approximately March 1979 through March 1981, defendants employed some fifty persons as locker room attendants at the four clubs. The locker room attendants' primary responsibility was to keep the locker rooms clean, open up lockers, and hand out towels and toiletries to customers in the locker rooms. They would wash the sinks, showers, and toilets. In addition, it was an important part of their job to keep other parts of the club clean. They frequently did such things as vacuum the carpets in the lounge and aisle areas, sweep the courts, clean the whirlpool, take out the garbage, and police the trash from the parking lots.

9. Most of the locker room attendants were young boys and girls going through high school. Nineteen of them were minors under the age of sixteen, employed in violation of § 12 of the Act. The minors worked numerous hours after 7 p.m., often as late as 12 midnight or 1 a.m. They were frequently working more than three hours a day, eighteen hours per week, during weeks school was in session, in violation of the child labor provisions of §§ 12(c) and 15(a)(4) of the Act, and the regulations found at 29 C.F.R. Part 570 Subpart C.

10. The male locker room attendants worked for tips only, except during slow shifts when they sometimes received cash payments of $1/hr., off the books. The female locker room attendants received $2.50/hr., off the books, plus tips, if any. This pay practice resulted in failure to compensate these employees at the minimum wage specified by the Act. The failure to

pay the locker room attendants minimum wages violated § 6(a)(1) of the Act.

11. In addition, defendants employed some sixty one front desk receptionists and other employees in violation of the overtime provisions of the Act. The front desk employees attended a desk at each club where they would greet customers coming to play racquetball, take their money in payment, take telephone reservations, show prospective members the club facilities, and give instructions to the locker room attendants. They received payroll checks from the Unique Racquetball bank account. They were rarely paid overtime wages for hours worked over forty despite the fact that they were regularly working such hours. The failure to pay these employees time and one half for all hours worked over forty in each workweek violated the overtime provisions of § 7(a)(1) of the Act.

12. Defendants maintained no payroll records of records of hours worked by the locker room attendants. Indeed, what little pay these attendants received was in cash and was "off the books." No deductions were made for such things as income taxes and social security. The only records kept for the desk receptionists and other employees were weekly sign-in sheets, which were inaccurate and incomplete, in violation of § 11(c) of the Act.

13. The Court has considered and rejects defendants' claim that they did not violate the child labor and minimum wage provisions of the Act because the locker room attendants were employed as "independent contractors." This defense centers around three young men, Steve Siegelman, James Maxwell, and Kevin Sears, who were serving as locker room attendants at the clubs when they were approached by Khayami and Gerweck and asked to "manage" the locker rooms. Steve Siegelman, twenty one years old at the time, was a locker room attendant at the Bethpage Club during May 1979 when he was approached by Khayami and asked to be the "manager" of the locker rooms. Khayami and Gerweck later asked James Maxwell and Kevin Sears to manage the Lake Grove and Farmingville locker rooms.

Both were 17 years old at the time. As locker room "managers," Siegelman, Maxwell and Sears visited the clubs occasionally to drop off supplies and cash payments for the attendants. These supplies and payments were provided by Khayami. While the three young men were "managers," they continued to work as locker room attendants themselves. They did very little supervision of the locker room attendants, which was done instead by the desk receptionists, who were employed by Unique Racquetball.

14. Each club had a desk receptionist on duty at all times during operating hours. The desk receptionist answered the phone, took court reservations, made sure the club was clean, and took care of emergencies. The desk receptionists routinely inspected the locker room as part of their job, and gave instructions to the locker room attendants to perform tasks such as vacuuming the rugs, sweeping the courts, or cleaning the locker rooms. They served as the direct supervisors of the locker room attendants. Sometimes, if attendants did not come to work, the desk receptionists telephoned other attendants to substitute.

15. Each club also had a general manager. The function of the general managers was to insure that each club ran smoothly. Khayami was the general manager of the Bethpage Club, Gerweck was the general manager of the Lake Grove and Farmingville Clubs, and one Richard Densing was the general manager of the Oceanside Club. The general managers visited their respective clubs, often in the afternoon and evening hours, and inspected the operation, talked to customers, and generally were on-hand to coordinate the operation. During these visits they often gave instructions to the locker room attendants.

16. Defendants' violations of the minimum wage, child labor, and overtime and recordkeeping provisions of the Act, as described above, were willful violations.

17. As a result of defendants' violations of the minimum wage and overtime provi-

sions of the Act, the amount of $134,-936.000 is due to 111 employees of defendants for the period of March 12, 1979 through March 31, 1981. Of that amount, $104,906.66 is attributable to the minimum wage violation, and $30,029.94 is attributable to the overtime violations. The specific amounts of back wages due to each of defendants' employees is listed in Exhibit A.

18. Prejudgment interest is due on the back wages. The interest due is to be computed at the adjusted prime rate established by the Secretary of Treasury pursuant to 26 U.S.C. § 6621. Interest is to be calculated from the mid-point of the period with respect to which back wages are sought with respect to each employee. Interest pursuant to 26 U.S.C. § 6621 is calculated as follows:

| PERIOD | RATE | AUTHORITY |
|---|---|---|
| 02/01/78 to 01/31/80 | 6% | Rev.Ruling 77–441, 1977–2 C.B. 480 |
| 02/01/80 to 01/31/82 | 12% | Rev.Ruling 79–366, 1979–2 C.B. 402 |
| 02/01/82 to 12/31/82 | 20% | Rev.Ruling 81–260, IRB 1981–44, 19 |
| 01/01/83 to 06/30/83 | 16% | 26 U.S.C. § 6621 |
| 07/01/83 to 06/30/86 | 11% | 26 U.S.C. § 6621 |
| 07/01/86 to 12/31/86 | 9% | 26 U.S.C. § 6621 |

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over this action pursuant to § 17 of the Fair Labor Standards Act, 29 U.S.C. § 217. The Court has personal jurisdiction over each of the defendants based on residency and the fact that each has done business in the State of New York.

2. Defendants are an "enterprise" within the meaning of § 3(r) of the Act and an "enterprise" engaged in commerce or in the production of goods for commerce, within the meaning of § 3(a)(1) of the Act.

3. The individual and corporate defendants are "employers" within the meaning of § 3(d) of the Act. *See e.g., Donovan v. Sabine Irrigation Co.,* 695 F.2d 190, 194–5 (5th Cir.), *cert. denied,* 463 U.S. 1207, 103 S.Ct. 3537, 77 L.Ed. 1387 (1983); *Marshall v. Sam Dell's Dodge Corp.,* 451 F.Supp. 294, 296 (N.D.N.Y.1978); *Donovan v. Kaszycki & Sons Contractors, Inc.,* 599 F.Supp. 860, 869 (S.D.N.Y.1984). Khayami and Gerweck, President and Secretary of the corporation, exercised virtually complete control over it and are personally liable for any amounts owed the employees due to violations of the Act. *Donovan v. Sovereign Security, Ltd.,* 726 F.2d 55, 59 (2d Cir.1984); *Sabine Irrigation,* 695 F.2d at 194–5; *U.S. v. Klinghoffer Bros. Realty Corp.,* 285 F.2d 487 (2d Cir.1960). The

persons listed in Exhibit A were all employees of defendants within the meaning of § 3(e) of the Act.

4. Defendant employers failed to make, keep, and preserve such records of the persons employed by them and the wages, hours, and other conditions and practices of employment maintained by them in violation of §§ 11(c) and 15(a)(5) of the Act.

5. Since defendants did not keep accurate or adequate records of employee hours and wages, plaintiff carried his burden of proof by producing "sufficient evidence to show the amount and extent of ... [uncompensated] work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515, *rehearing denied,* 329 U.S. 822, 67 S.Ct. 25, 91 L.Ed. 699 (1946). Defendants failed to meet their burden of rebutting plaintiff's evidence and therefore the Court may award the damages reasonably inferred, despite the fact that they are only approximate in amount. 328 U.S. at 687–88, 66 S.Ct. at 1192. *See also Kaszycki & Sons,* 599 F.Supp. at 868; *Donovan v. Sovereign Security, Ltd.,* (CCH) 94 Lab.Cas. ¶ 34,219 at 44, 732 (E.D. N.Y.1982), *amended on other grounds,* 81 Civ. 0615 (E.D.N.Y.1983), *amendment rev'd,* 726 F.2d 55 (2d Cir.1984).

■ 6. The locker room attendants were employees of defendants rather than independent contractors. The determination of the employment relationship does not depend on "isolated factors, but rather upon the circumstances of the whole activity." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730, 67 S.Ct. 1473, 1477, 91 L.Ed. 1772 (1947); *U.S. v. Silk*, 331 U.S. 704, 716, 67 S.Ct. 1463, 1469, 91 L.Ed. 1757 (1947). The economic realty of the relationship determines employee status. *Donovan v. TEH Co.*, 642 F.2d 141, 143 (5th Cir.1981); *Usery v. Pilgrim Equipment Co.*, 527 F.2d 1308, 1315 (5th Cir.1976), *cert. denied*, 429 U.S. 826, 97 S.Ct. 82, 50 L.Ed.2d 89 (1976); *EEOC v. Zippo Manufacturing Co.*, 713 F.2d 32, 36 (3rd Cir. 1983). The evidence set forth in Findings of Fact 13, 14, and 15 demonstrates the employer-employee relationship between defendants and the locker room attendants.

■ 7. Defendants failed to pay their locker room employees the minimum wage of not less than $2.90 an hour during the year beginning January 1, 1979, not less than $3.10 an hour during the year beginning January 1, 1980, and not less than $3.35 an hour beginning January 1, 1981, in violation of §§ 6(a) and 15(a)(2) of the Act as described in Finding of Fact 8, 9, and 10.

■ 8. Defendants failed to compensate their front desk receptionists and other employees in workweeks longer than forty hours for their employment in excess of the hours above specified at a rate not less than one and one-half the regular rate at which they were employed in violation of §§ 7(a) and 15(a)(2) of the Act as described in Finding of Fact 11.

■ 9. Defendants frequently violated the child labor provisions of §§ 12(c) and 15(a)(4) of the Act and the regulations found at 29 C.F.R. Part 570, Subpart C as described in Finding of Fact 9.

■ 10. Defendants knew or had reason to know that their business was subject to the Act. Defendants Khayami and Gerweck admitted this during their depositions, and the fabrication concerning the locker room attendants clearly indicates intent to avoid the provisions of the Act. A willful violation of the Act occurs where, as here, either (1) an employer knows that his business is subject to the Act and the employer's practices do not conform to the Act's requirements, *Donovan v. Carls Drug Co.*, 703 F.2d 650, 652 (2d Cir.1983), or (2) the employer acts with reckless indifference to the Act, *e.g.*, *Klinghoffer*, 285 F.2d at 472; *Kaszycki & Sons*, 599 F.Supp. at 870. Back wages are thus due defendants' employees for any violation occurring within three years of the filing of the complaint in this action.

11. Pursuant to § 17 of the Act, plaintiff is entitled to an injunction enjoining defendants from any future violation of the minimum wage, overtime compensation, child labor, and recordkeeping requirements of the Act and restraining further withholding of the back wages wrongfully withheld. *See, e.g.*, *Sabine Irrigation*, 695 F.2d at 196; *Sovereign Security, Ltd.*, 94 Lab.Cas. at 44,734; *Marshall v. Burger King Corp.*, 504 F.Supp. 404, 411–12 (E.D. N.Y.1980), amended, 509 F.Supp. 353 (E.D. N.Y.1981), *aff'd*, 675 F.2d 516 (2d Cir.1982); *Sam Dell's Dodge*, 451 F.Supp. at 305–06. This injunction may validly issue even if present violations of the Act have ceased. *See, e.g.*, *Walling*, 323 U.S. 37 at 43, 65 S.Ct. 11, 14, 89 L.Ed. 29 (1944); *Sovereign Security, Ltd.*, 94 Lab.Cas. at 44,734; *Marshall v. Coach House Restaurant, Inc.*, 457 F.Supp. 946, 953 (S.D.N.Y.1978); *Sam Dell's Dodge*, 451 F.Supp. at 305–06; *Kaszycki & Sons*, 599 F.Supp. at 871–72.

12. Defendants shall not withhold the back wages due the employees and former employees listed on Exhibit A. Defendants shall pay to plaintiff's representatives $134,936.60 in unpaid minimum wage and overtime compensation plus prejudgment interest in an amount to be determined. Interest is to be computed pursuant to the adjusted prime rate prescribed by 26 U.S.C. § 6621, as described in Findings of Fact 18. *See, Marshall v. Burger King Corp.*, 509 F.Supp. 353, 356 (E.D.N.Y.1981), 510 F.Supp. 557, 560 (E.D.N.Y.1981), *aff'd sub nom.*, *Donovan v. Burger King Corp.*, 675 F.2d 516 (2d Cir.1982); *Donovan v. Sover-*

*eign Security, Ltd.,* 726 F.2d 55, 57–58 (2d Cir.1984); *EEOC v. County of Erie,* 751 F.2d 79, 82 (2d Cir.1984). Interest will continue to accrue at the rate specified until all back wages and accrued interest are paid. Interest is to be computed by the U.S. Department of Labor as soon as possible after receipt of the Court's decision in this case.

## JUDGMENT AND ORDER

I. ORDERED, ADJUDGED AND DE-CREED, that defendants Unique Racquetball and Health Clubs, Inc., Seyd Khayami and John Gerweck, their officers, agents, servants, employees, and those persons in active concert or participation with them who receive actual notice of this Order by personal service, or otherwise, be, and they hereby are, permanently enjoined and restrained from violating the provisions of §§ 6(a)(1), 7(a)(1), 11(c), 12(c), 15(a)(2), 15(a)(4), and 15(a)(5) of the Fair Labor Standards Act of 1938, as amended, (52 Stat. 1060, 29 U.S.C. §§ 201–219, *et seq.*), hereinafter called the Act, in the following manners:

1. Defendants shall not, contrary to § 6 of the Act, pay to any of their employees who in any workweek are engaged in commerce or in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce, within the meaning of the Act, wages at rates less than those which are now, or which in the future may become, applicable under § 6 of the Act.

2. Defendants shall not, contrary to § 7 of the Act, employ any of their employees in any workweek who are engaged in commerce or in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce, within the meaning of the Act, for workweeks longer than the hours now, or which in the future become, applicable under §§ 7 and 15(a)(2) of the Act, unless the said employees receive compensation for their employment in excess of the prescribed hours at rates not less than one and one-half times the employees' regular rates.

3. Defendants shall not, contrary to §§ 12(c) and 15(a)(4) of the Act, employ minors under the age of eighteen years in commerce or in the production of goods for commerce, or in an enterprise engaged in commerce or in the production of goods for commerce, within the meaning of the Act, on jobs or during hours which constitute oppressive child labor as defined in § 3(*l*) of the Act and the Regulations issued pursuant thereto and found at 29 C.F.R. Part 570, Subpart C, § 570.35.

4. Defendants shall not fail to make, keep, and preserve adequate records of their employees and of the wages, hours, and other conditions and practices of employment maintained by them, as prescribed by the Regulations issued pursuant to §§ 11(c) and 12 of the Act and found at 29 C.F.R. Part 516 and 29 C.F.R. § 570.36.

5. Defendants shall not withhold the back wages due the employees and former employees listed on Exhibit A. Defendants shall pay to plaintiff's representatives $134,936.60 in unpaid minimum wage and overtime compensation plus prejudgment interest, in an amount to be determined. Interest is to be computed pursuant to the adjusted prime rate prescribed by 26 U.S.C. § 6621. Interest will continue to accrue at the rate specified until all back wages and accrued interest are paid. Interest is to be computed by the U.S. Department of Labor as soon as possible after receipt of the Court's decision in this case; and it is further

II. ORDERED, ADJUDGED AND DE-CREED that any monies due persons named in Exhibit A, annexed hereto and not so distributed by plaintiff within one (1) year, because of plaintiff's inability to locate the proper person or said persons' refusal to accept such money, shall be deposited with the Clerk of the Court who shall forthwith deposit such money with the Treasurer of the United States pursuant to 28 U.S.C. § 2041; and it is further

ORDERED, that if payment is not tendered within such time, additional interest shall be due defendants' employees and former employees at the applicable adjusted prime rate, and it is further

III. ORDERED, ADJUDGED AND DECREED that the costs of this action shall be taxed by the Clerk against the defendants.

SO ORDERED.

EXHIBIT A

| | Backwages Due |
|---|---|
| AMATO, BOB | $1,673.15 |
| ARNELLA, DEBRA | 157.90 |
| AUTH, LARRY | 93.39 |
| BANCALARI, ANGELA | 232.21 |
| BARRERO, ED | 967.20 |
| BEEKMAN, DIANE | 48.12 |
| BOENING, GERALDINE | 157.90 |
| BARON, VICKI | 255.04 |
| BRADY, BONNIE | 706.06 |
| BRODSKY, LENNIE | 1,396.50 |
| BROWN, BARBARA | 2,516.80 |
| BUSH, MICHAEL | 55.72 |
| CAPUTO, JAMES | 348.40 |
| CHAMBERLAIN, BETH | 1,588.16 |
| CHAMBERLIN, DAVID | 4,598.10 |
| CHIORANDO KOCH, JOANN | 1,256.20 |
| CHIORANDO, ELIZABETH | 492.30 |
| CLEARY, ARLENE | 834.00 |
| COHEN, ROBERT | 2,624.00 |
| COSTANTINO, ROBERT | 527.00 |
| CRISPINS, ROBERT | 1,264.80 |
| CRISPINS, PATRICIA | 767.96 |
| CURIALE, JANET | 145.12 |
| DALL, PHILIP | 1,020.50 |
| DANIS, JEANIE | 527.10 |
| DELESSIO, LINDA | 181.09 |
| DELLA SALLE, LISA | 426.80 |
| DELUCIA, KEITH | 21.70 |
| DENSING, DENISE | 549.28 |
| DENSING, RICHARD | 1,340.77 |
| DERASMO, DONNA | 366.26 |
| DICRISTAFALO, FRANCINE | 489.90 |
| DONAHUE HEILIG, MARY ANNE | 96.24 |
| DOSCHER, DENISE | 194.06 |
| EICHNER, MICHAEL | 80.96 |
| ERNST, JANET | 72.18 |
| FELTINGHOFF, MARK | 4,651.70 |
| FELTINGHOFF, MITCHELL | 4,269.20 |
| FRENGER, RICHARD | 5,988.94 |
| FRIEDMAN, LORI | 27.00 |
| FRIEND, KAREN | 27.86 |
| FRITZMAN, MICHAEL | 1,143.20 |
| FUOTO, ROSEMARY | 295.71 |
| GILLARD, JAMES HAROLD | 6,536.80 |
| HALLORAN, THOMAS | 8,824.73 |
| HARRIS, LEONA | 22.50 |
| HITCHCOCK, SEAN | 348.40 |
| HOCK, CYNTHIA | 129.18 |
| IGNERI, PATRICIA A. | 400.80 |
| IMHOF, TERESE MARIE | 128.26 |
| IMPERIALE, GEORGIA | 144.21 |
| JONES, JANE | 540.72 |
| KAUFMANN, GLENN | 234.80 |
| KERRIGAN, PATTI JO | 96.24 |
| KOCHANOWSKI, MARY CATHERINE | 510.88 |
| KRAWCYCK, JANE | 588.30 |

| | Backwages Due |
|---|---|
| LAGNESE, SUSAN | $ 27.86 |
| LAMB, TOM | 558.00 |
| LAWRENCE, MARGARET | 238.46 |
| LEACH, MARY L. | 1,012.62 |
| LEACH, MICHAEL | 6,613.24 |
| LEACH, THOMAS | 1,785.05 |
| LESANDRO, JOSEPH | 3,218.23 |
| LEVANTHAL, JACK | 1,269.40 |
| LEVINE, GARY | 2,703.60 |
| LEVINE, MITCH | 613.80 |
| MARINO, BETTY | 372.40 |
| MARKS, CRAIG | 1,960.40 |
| MARTIN, BRIDGET | 339.60 |
| MARTIN, MARIANNE | 1,245.30 |
| MARTIN, MEG | 1,107.60 |
| MARTIN, PATRICIA | 3,452.91 |
| MASS, CLAUDIA | 657.36 |
| MAXWELL, JIMMY | 5,468.10 |
| MCKEON, KATHRYN | 175.48 |
| MCKEON, LAURIE | 207.46 |
| MCLEAN, ANDREW | 646.00 |
| MCCLEAN, ROSEMARY | 521.10 |
| MCMAHON, EILEEN R. | 598.46 |
| MICHAELS, JANE | 1,143.80 |
| MIECZKOWSKI, ROSEMARY | 550.24 |
| MITCHELL, FRANK | 1,293.20 |
| MITCHELL, LORRAINE | 27.83 |
| MULBERRY SMITH, LAVAIDA | 280.62 |
| MURRAY LOPRESTI, PATRICIA | 3,202.53 |
| NEWELL, MIKE | 256.28 |
| O'GARA, RONNIE | 106.64 |
| PALLADINO, STACEY | 619.50 |
| PARILLO, MARY ANN | 117.77 |
| PILKINGTON, DONNA | 622.80 |
| PLUNKETT, NADINA | 55.66 |
| POLCER, JEANETTE | 129.36 |
| REFF, STACEY | 27.04 |
| ROBERTI, JEANNE | 27.84 |
| ROCHELLE, EILEEN | 60.72 |
| SARDELLI, CHARLES | 3,773.40 |
| SARDELLI, LOUIS | 4,656.35 |
| SCHMANDER, BARBARA | 70.88 |
| SCHUMAN, LINDA | 96.18 |
| SEARS, KEITH | 2,406.25 |
| SEARS, KEVIN | 3,238.30 |
| SHISKO, LUCILLE | 785.89 |
| SIEGELMAN, STEVE | 2,010.00 |
| SMILER, ROBIN | 773.12 |
| STEIMEL, CHRISTINE | 739.91 |
| STEIMEL, RONNIE | 413.35 |
| THORNE, RICHARD | 4,359.20 |
| TSAMISIS, TED | 1,939.30 |
| WASZAK, ANDREA | 48.12 |
| YOUNG, BILLY | 595.20 |
| YOUNKINS, KATHY | 2,764.59 |
| TOTAL BACKWAGES DUE | $134,936.60 |

($104,906.66 attributable to minimum wage violation)
($30,029.94 attributable to overtime violation)