Chris CACI, Plaintiff,

v.

**THE WIZ OF LAKE GROVE, INC., Defendant.**

No. CV 01–3845.

United States District Court, E.D. New York.

March 31, 2003.

Somma Zabell & Associates, LLP, By Brian K. Saltz, Esq., Farmingdale, for Plaintiff.

Kelley Drye & Warren LLP, By Barbara E. Hoey and Kevin J. Smith, Esqs., New York, for Defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff Chris Caci ("Caci") brings this action against his former employer, defendant Cablevision Electronics Investments, Inc., commonly referred to as "The Wiz,"[1] alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law § 190 *et seq.* Presently before the Court are defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP"), and Caci's motion for partial summary judgment pursuant to FRCP 56.

## I. BACKGROUND

For purposes of this decision, the material facts are not in dispute and can be summarized as follows. Defendant is an electronics merchandise retailer, operating various stores in the region. Caci was hired by defendant in or about November 2000 as a sales associate. During an initial "training period," Caci was paid a "training wage" of $10.00 per hour for every hour worked; he was not entitled to earn any commissions. Beginning January 1, 2001, defendant began paying Caci pursuant to a "draw" against "commission" pay plan, under which Caci was paid a minimum "draw" of $8.00 per hour and "commissions" based on Caci's sales of merchandise. Under this pay plan, Caci received weekly paychecks and a monthly commission check, with the amount of the monthly commission check reduced by the amount already paid in the weekly paychecks for the applicable period. The hourly draw was "guaranteed," that is, it was paid for every hour worked regardless of the amount of merchandise sold by Caci; the commissions, however, were not guaranteed but were earned based on sales. In other words, if Caci did not sell enough merchandise for his commissions to exceed his draw, he would still be paid the full amount of the minimum draw for all of the hours worked.

As part of his duties, Caci was required to clean and maintain his work area after the store closed. In this respect, Caci worked a total of 7 hours and 11 minutes after the store closed for the period from January 3, 2001 to February 12, 2001. During that period, Caci's weekly paychecks totaled at least $8.00 per hour for every hour worked, including the time he worked after the store closed. Caci's commission checks reflected a reduction for the amount he was paid weekly; consequently, the commission checks reflected reduction for the amount he was paid for hours worked before and after the store closed.

In Caci's view, however, he was not being paid for the hours he worked after the store closed because he was unable to make any "sales" during that time and, therefore, he was unable to earn any commissions during that time. Sometime in January 2001, Caci complained to Assis-

---

**1.** According to defendant, while Caci has named the defendant as "The Wiz of Lake Grove, Inc.," there is no such entity; the name of Caci's former employer is "Cablevision Electronics Investments, Inc.," which is commonly referred to as "The Wiz."

tant Manager Richard Hewitt ("Hewitt") about being required to clean the sales area after the store closed; and he informed Hewitt that he had contacted the "state labor board" to complain about the practice.

Thereafter, various incidents occurred between Caci and defendant concerning defendant's utilization of the "draw" against "commission" pay plan and the requirement that Caci work cleaning the sales area after the store closed. These incidents eventually led to Caci's termination of employment on or about March 2, 2001. The details of these incidents need not be recounted for purposes of this decision. It is sufficient for present purposes to note that Caci maintains that he was terminated in retaliation for his complaints about what he perceived as defendant's violations of the wage laws; and that defendant maintains that Caci was terminated primarily for refusing to complete his assigned job duties (*i.e.*, for refusing to work after the store closed), which termination followed Caci's purported complaint to defendant's Regional Employer Relations Manager, James Scaffidi ("Scaffidi"), on February 16, 2001, that he would not clean after the store closed and that defendant's cleaning requirement was "illegal."

Caci then brought this action alleging violation of the FLSA for failure to pay minimum wage and retaliation and violation of the New York Labor Law for failure to pay minimum wage, retaliation, and illegal "deduction from wages." Defendant moves for summary judgment on all of Caci's claims; and Caci moves for summary judgment on all but the retaliation claims.

## II. *DISCUSSION*

### A. *FLSA Minimum Wage Claim*

The FLSA minimum wage provision requires that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce ... wages ... not less than $5.15 an hour beginning September 1, 1997." 29 U.S.C. § 206(a)(1). The Second Circuit, in a criminal action, held that this provision is not violated "so long as the total weekly wage paid by an employer meets the minimum weekly requirements of the statute, such minimum weekly requirement being equal to the number of hours actually worked that week multiplied by the minimum hourly statutory requirement." *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir.1960). The Second Circuit also recognized this construction in a civil case, *see Rogers v. City of Troy*, 148 F.3d 52, 59 (2d Cir.1998) ("[S]ince the plaintiffs' wages for every work week were greater than the statutory minimum even when the wages were discounted for the delay in payment, each employee would be paid at least the minimum wage for every hour he or she worked. It follows that the new pay schedule did not result in an evasion of the substantive minimum wage or overtime requirements of the FLSA."), and lower courts in this circuit have followed this construction in civil cases, *see Donovan v. Kaszycki & Sons Contractors, Inc.*, 599 F.Supp. 860, 868–69 (S.D.N.Y.1984); *Marshall v. Sam Dell's Dodge Corp.*, 451 F.Supp. 294, 302–03 (N.D.N.Y.1978). Moreover, other circuits have followed this construction in civil cases. *See Hensley v. MacMillan Bloedel Containers, Inc.*, 786 F.2d 353, 357 (8th Cir.1986); *Dove v. Coupe*, 759 F.2d 167, 171–72 (D.C.Cir. 1985); *Blankenship v. Thurston Motor Lines, Inc.*, 415 F.2d 1193, 1198 (4th Cir. 1969). Notably, the FLSA and the regulations issued thereunder by the United States Department of Labor—the agency charged with interpreting and enforcing

the federal wage and hour laws—authorize the type of "draw" against "commission" pay plan utilized by defendant. *See* 29 U.S.C. § 207(i); 29 C.F.R. §§ 779.410–.421.

■ Despite Caci's contention that he was not paid for the hours he worked after the store closed because he was unable to make any sales and, therefore, to earn any commissions during those hours, the undisputed facts demonstrate that Caci was paid at least the required minimum wage for every hour worked, that is, Caci's weekly pay divided by the total hours he worked—including hours he worked after the store closed—yielded an hourly rate exceeding the required minimum wage; that Caci may have been unable to make "sales" during the relatively short period of time he spent cleaning after the store closed does not change the fact that he was paid at least the required minimum wage for every hour worked. *See Klinghoffer Bros. Realty Corp.* 285 F.2d at 490; *see also Anchor Motor Freight Ass'n v. Anchor Motor Freight, Inc.,* 1988 WL 156772, at *5 (D.Del. Jan.31, 1988) ("In order to recover under section 206, the employee must show that the weekly pay divided by the hours worked in one week resulted in an hourly wage less than the statutory minimum of $3.35 an hour. Since the hourly rate paid to Drivers by Anchor is in excess of $13.00, plus benefits, even if the Drivers are effectively "uncompensated" for some time spent in loading and unloading automobiles, it would take a much more substantial time period of nonpayment than that being claimed by plaintiff here to reduce the hourly wage to below statutory minimum wage."). Accordingly, Caci is unable to establish a

violation of the FLSA, and this claim must be dismissed.

### B. *FLSA Retaliation Claim*

■ The relevant provision of the FLSA provides that

it shall be unlawful for any person ... to discharge or in any other manner discriminate against any employee because such employee has *filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.*

29 U.S.C. 215(a)(3) (emphasis added). The Second Circuit has held that "[t]he plain language of this provision limits the cause of action to retaliation for filing formal complaints, instituting a proceeding, or testifying, but does not encompass complaints made to a supervisor." *Lambert v. Genesee Hosp.,* 10 F.3d 46, 55 (2d Cir. 1993).[2]

Pursuant to *Lambert,* Caci's purported complaints to Hewitt and Scaffidi are insufficient to support a claim under the FLSA. *See id.* Moreover, given the Second Circuit's construction of the statute, it appears that Caci's purported informal contact to the "state labor board" does not constitute protected activity under the FLSA. *See id.; see also Lamont v. Frank Soup Bowl, Inc.,* 2001 WL 521815, at *6 (S.D.N.Y. May 16, 2001). Accordingly, this claim must be dismissed.

### C. *State Law Claims*

As there remains no federal claim in this action, the Court declines to exercise supplemental jurisdiction over Caci's state law

---

**2.** Defendant's counsel has also cited a recent, unpublished summary order by the Second Circuit for the same proposition. Counsel is reminded to observe the restriction on citation to such decisions. *See* 2d Cir. R. § 0.23.

claims—the only remaining claims in this action. *See* 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction over claim if it has dismissed all claims over which it had original jurisdiction). Accordingly, the remaining state law claims are dismissed for lack of subject matter jurisdiction.

### III. *CONCLUSION*

For the above reasons, defendant's motion for summary is granted to the extent that plaintiff Caci's federal claims are dismissed, and is otherwise denied; Caci's motion for partial summary judgment is denied; and the remaining state law claims are dismissed for lack of subject matter jurisdiction. The Clerk of Court is directed to close the file in this action.

SO ORDERED.